In re Robert BLAIR and Cheryl Blair, Debtors.

WESTERN THRIFT & LOAN ASSOCIATION, a Corporation, Plaintiff,

v.

Robert BLAIR and Cheryl Blair, Defendants.

Bankruptcy No. 82–00303–M13.
Adv. No. C82–0388–M13.

United States Bankruptcy Court,
S. D. California.

June 29, 1982.

Steven A. Berkowitz, San Diego, Cal., for Western Thrift & Loan Ass'n.

Robert B. Shanner, Ralph E. Garner, San Diego, Cal., for debtors.

ROSS M. PYLE, Bankruptcy Judge.

Western Thrift and Loan Association's Complaint for Relief from the Automatic Stay came on regularly for hearing on June 8, 1982. The complaint asked for return of the security or, in the alternative, that the Debtors be required to make the full payments as required by the contracts. The Court having considered the arguments of counsel concluded that Western Thrift was bound by the provisions of the confirmed Chapter 13 plan and orally granted judgment for the Debtors. This opinion is written to explain the Court's oral decision.

## FACTS

On August 31, 1979, Robert Clark Blair and Cheryl Anne Blair executed a promissory note in the amount of $8,894.32, secured by a 1977 Chrysler Cordoba automobile. The note provided for monthly payments to Western Thrift and Loan Association (Western Thrift) of $260.57 with interest at 17.85 per cent per annum. On May 18, 1979, the Blairs executed a promissory note

in the amount of $3,068.13, secured by a 1974 Chevrolet pick-up truck. The note provided for monthly payments of $110.79 with interest at 17.92 per cent per annum. Both notes were in default in January 1982.

On January 26, 1982, Robert Clark Blair and Cheryl Anne Blair filed a joint petition for relief under Chapter 13 of Title 11 of the United States Code. At the same time, the Blairs filed a Chapter 13 plan which was subsequently confirmed on March 1, 1982. The plan provides for payment of 100% of allowed unsecured claims. Article 1, ¶ 4 of the plan further provides for secured creditor Western Thrift to receive $172.00 per month as payment on the Blairs' 1979 Chrysler Cordoba, and $50.00 per month as payment on the Blairs' 1972 Chevrolet pick-up truck. Each of those payments include interest at 10 per cent per annum. The plan lists the fair value of the Cordoba at $5,580.00 and the fair value of the pick-up at $800.00.

At the time the petition was filed the balance owing on the Chrysler was $5,020.75, and the balance owing on the Chevrolet pick-up was $544.23. Western Thrift was, thus, an oversecured creditor.

No objections to the Blairs' Chapter 13 plan were filed and no creditor appeared at the confirmation hearing. The plan was confirmed.

On March 8, 1982, Western Thrift filed a complaint under 11 U.S.C. § 362. The complaint asked that the Blairs be ordered to surrender the vehicles or, in the alternative, that they be required to make full monthly payments on the vehicles as called for in the security agreements.

■ At the preliminary hearing on the § 362 complaint, Western Thrift argued that 11 U.S.C. § 506(b) requires that an oversecured creditor receive interest on its claim as provided in the security agreement.

DISCUSSION

Section 506(b) provides as follows:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

11 U.S.C. § 506(b) (Supp. III 1979).

Section 506(b) is not self-executing. An oversecured creditor who wants to press his claim under § 506(b) for the contract rate of interest must either request a § 506(b) hearing prior to the confirmation of the Chapter 13 plan, or appear at the confirmation hearing and object to a plan if in the creditor's view it fails to provide appropriate treatment under § 1325(a)(5).[1]

■ Absent affirmative action at or prior to the confirmation hearing, secured creditors effectively waive any right to the contract rate of interest if the plan is confirmed, because, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327 (Supp. III 1979).

The Plan in the instant case provides that the creditor shall retain the lien, and provides 10% interest. The creditor's viewpoint apparently is that this is something less than the allowed amount of the claim.

CONCLUSION

■ Western Thrift was provided for by the plan. The notice of the meeting of creditors and confirmation hearing contained a summary of the plan and indicated that Western Thrift would be paid interest on its claim at the rate of 10%. Western

---

1. § 1325(a)(5) in pertinent part provides that a secured creditor must either accept the plan or:

"(B)(i) the plan [must provide] that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;"

**318**

Thrift had ample opportunity to object to the plan, or request a determination that it was entitled to the contract rate of interest, prior to or at the confirmation hearing. It did neither. The Blairs' plan was confirmed without objection on March 1, 1982. Under § 1327 Western Thrift is bound by the confirmed plan.