In re Mark Stephen EVANS, Kathy Lynn Evans, aka Kathy Lynn Oxford, Debtors.

ANAHEIM SAVINGS AND LOAN ASSOCIATION, Plaintiff,

v.

Mark Stephen EVANS, Kathy Lynn Evans, aka Kathy Lynn Oxford and Harry Heid, Trustee, Defendants.

In re Andrew Joseph JACKSON and Marie Jackson, Debtors.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, Plaintiff,

v.

Andrew Joseph JACKSON, Marie Jackson, and Harry Heid, Trustee, Defendants.

Bankruptcy Nos. 82–0908–M13, 82–0718–K13.

Adv. Nos. C82–0843–M13, C82–0844–K13.

United States Bankruptcy Court, S. D. California.

Sept. 17, 1982.

Robert C. Harvey, of Alvarado, Rus & McClellan, Orange, Cal., on behalf of plaintiff Anaheim Sav. and Loan Ass'n, Adv. No. C82–0843–M13 and on behalf of plaintiff Federal Nat. Mortgage Ass'n, Adv. No. C82–0844–K13.

Thomas M. Lockhart, Chula Vista, Cal., on behalf of debtors Mark Stephen Evans and Kathy Lynn Evans, Adv. No. C82–0843–M13.

Neil G. Strachan, San Diego, Cal., on behalf of debtors Andrew Joseph Jackson and Marie Jackson, Adv. No. C82–0844–K13.

Harry W. Heid, Chapter 13 trustee, in pro. per.

MEMORANDUM OF OPINION

ROSS M. PYLE, Bankruptcy Judge.

On July 13, 1982, the above entitled adversary proceedings came on regularly for trial. Since these proceedings involve similar questions of law the Court tried them together and took both matters under submission. Having considered the evidence presented, the pleadings, and arguments of counsel, the Court now renders its Decision.

FACTS

A. FEDERAL NATIONAL MORTGAGE ASS'N v. JACKSON & HEID, Adversary No. C82–0844–K13.

The parties stipulated that the fair market value of the subject property is $55,000.

Plaintiff Federal National Mortgage Association (FNMA) holds the first trust deed and alleges that there is currently $34,875 owing on the note secured by the first trust deed. The Debtor, however, claims that only $34,200 is owing on Plaintiff's note. The Plaintiff and Debtor agree that there is a second trust deed against the property which secures an obligation in the amount of $11,000 and a third trust deed securing an obligation of $1,848. Thus, the total amount of debt secured by the property is somewhat less than $48,000, leaving an equity of approximately $7,000.

Debtors Jackson filed a Chapter 13 petition on February 23, 1982. The plan was confirmed on May 17, 1982.

The Jacksons' Chapter 13 Plan set the arrearages on the obligation to Plaintiff at $12,512.50, and provided for payment of the arrearages at the rate of $300 per month.

Since the filing of the Chapter 13 petition the Debtors have made all of their house payments as they have come due. Debtors did not make a plan payment in March, but have made all plan payments since then. Plan payments are currently bing deducted from Debtor's payroll checks.

Plaintiff, Federal National Mortgage Assoc. filed its Complaint for Relief from Stay on May 10, 1982.

### B. ANAHEIM SAVINGS & LOAN ASS'N v. EVANS & HEID, Adversary No. C82–0843–M13.

Debtors Evans filed their Chapter 13 petition on March 5, 1982. The plan was confirmed on April 6, 1982. The Evans' Chapter 13 Plan set the arrearages on the obligation to Anaheim Savings and Loan Association (Anaheim Savings) at $2,587, and provided for payment of the arrearages at the rate of $110 per month. The Debtors are current in their payments to the plan and are current on payments to creditors outside the plan as well.

Anaheim Savings filed its Complaint for Relief from Stay on May 10, 1982. At trial the parties stipulated that the principal amount due on Plaintiff's first deed of trust is $55,782.03. Plaintiff claims that there is also due interest in the amount of $5,796 and late charges totaling $186.96. The Debtor claims that accrued interest amounts to $3,100.

The fair market value of the property is in dispute. Plaintiff's appraisal testimony sets the fair market value as of July, 1982, at $51,000. The Debtor claims that the fair market value is at lease $62,000 and testified that a potential buyer's expression of interest at that price was turned aside.

The issue presented by these adversary proceedings is whether a creditor, secured by an interest in the Debtor's principal residence, may obtain relief from the automatic stay, when the Confirmed Plan provides for curing the default, and the Debtor is current in his payments to the Plan and in payments outside the Plan.

### DISCUSSION

The purpose of Chapter 13 is to allow individuals with regular income the opportunity to work out of a financial bind. In many instances the precipitating factor in a Chapter 13 filing is a pending foreclosure on the debtors' home. Mindful of the problems of both debtors and secured creditors Congress provided that a Chapter 13 plan may:

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

\* \* \* \* \* \*

(5) notwithstanding·paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b)(2) & (5).

In both proceedings currently before the Court, the plans provided for curing the defaults as permitted by § 1322(b)(5). Both plans were confirmed without objec-

tion after a noticed hearing. Debtors in each case argue that their secured creditors are bound by the provisions of the confirmed plan under § 1327(a).[1]

Despite the existence of a confirmed plan, Plaintiffs in these adversary proceedings argue that they are entitled to relief from the automatic stay to proceed with their foreclosure remedies under California Law. Both Plaintiffs base their claims for relief on § 362(d)(2) of the Bankruptcy Code. To obtain relief under § 362(d)(2) a secured creditor must prove that there is no equity in the subject property. If the creditor carries its burden, the Court must grant the relief unless the Debtor is able to demonstrate that the property is necessary to an effective reorganization.[2]

For the purpose of this opinion the Court assumes, without deciding, that the Plaintiffs have carried their burden on the equity issue. However, for the reasons set forth below, this Court does not reach the issues presented by the § 362 complaints.

The problem before the Court involves the interplay of § 1327 with § 362. Section 362 was designed to afford creditors a quick and efficient means to enforce their rights against property of a debtor.[3]

Each of the Chapter 13 plans in the instant proceedings provides for current payments to be made directly to the secured creditor and for payment of arrearages through the plan. Debtors here contend that the secured creditors are adequately protected by the provisions of the plans. Plaintiffs, however, did not base their complaints on lack of adequate protection under § 362(d)(1). Rather, as noted previously, the complaints rest on lack of equity under § 362(d)(2).

The question boils down to this: Does § 1327(a) mean what it says?

This Court recently addressed the effect of § 1327(a) in a slightly different context. *Western Thrift & Loan Ass'n v. Blair,* 21 B.R. 316 (Bkrtcy. S.D. Cal. 1982).

In the *Blair* case an oversecured creditor argued that, under § 506(b), it was entitled to interest at the contract rate. The confirmed Chapter 13 plan provided for interest at 10%, which was well below the contract rate. This Court held that the creditor was bound by the provisions of the confirmed plan, and indicated that the creditor should have objected to confirmation of the plan, or sought a § 506(b) hearing prior to the confirmation hearing.

Where a confirmed plan provides the means to cure a default on a secured obligation § 1327(a) must be read literally to defeat a § 362(d)(2) complaint. To hold otherwise would defeat the rehabilitative purpose of Chapter 13 and largely eliminate the incentive to attempt a work out.

The Court's decision places the burden on secured creditors to actively pursue their remedies in this Court. In situations such as these it is incumbent upon secured creditors to object to confirmation of the Chapter 13 plan if they feel their objections will prevail.

In the *Jackson* case, Plaintiff FNMA filed its Complaint for Relief from Stay prior to confirmation. However, FNMA made no appearance at the confirmation hearing, filed no objection to the plan, and no hearings under the Relief from Stay Complaint had been conducted. Absent some action by the creditor at the confirmation hearing, the Court is not likely to be advised as to any pending § 362 complaint. In the *Jackson* case, had FNMA appeared in some manner at the confirmation hearing the Court would have been able to consider

1. The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
    11 U.S.C. § 1327(a).

2. 11 U.S.C. § 362(g).

3. 11 U.S.C. § 362(e) requires a hearing on a relief from stay complaint to be held within 30 days after the filing of the complaint. A final hearing if needed must take place within 60 days after the filing of the complaint. *See* H.R. Rep. No. 95–595, 95th Cong., 1st Sess., 344 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787.

the allegations of the complaint and to determine whether the confirmation hearing should be continued past a hearing on the complaint, or perhaps held in conjunction with the 362 hearing as was done in *Roosevelt Sav. Bank v. Branch,* 10 B.R. 227 (Bkrtcy. E.D.N.Y. 1981)[4]

But, once a plan is confirmed § 1327 curtails the secured creditor's rights under § 362, at least so long as the debtor makes current payments outside the plan, and is not in default under the plan. To hold otherwise would be patently unfair to a debtor who seeks, in good faith, to cure arrearages. Plaintiffs are receiving the payments due under the contract and the prepetition arrearages are being cured by monthly payments through the plan. The original contracts, as supplemented by the Chapter 13 plans which are being performed, are, therefore, *not presently in default.* The defaults are in the process of being fully cured by the Chapter 13 plans. Since the obligations cannot now be considered in default there is no reason to relieve the stay in these proceedings. Secured creditors are not entitled to proceed with foreclosure remedies if the obligation is not in default. It is inappropriate to allow a secured creditor to prevent a Chapter 13 Debtor from curing a default by way of a relief from stay complaint unless a proper objection is raised and considered at the time of the confirmation hearing.

## CONCLUSION

Secured creditors like all other creditors are bound by the provisions of a confirmed Chapter 13 plan. Until such time as the Debtor defaults under the plan or ceases to make current payments outside the plan § 1327(a) operates to defeat a secured creditor's complaint for relief from stay under § 362.

The foregoing shall constitute Findings of Fact and Conclusions of law pursuant to Bankruptcy Rule 752. Counsel for the respective Debtors shall submit appropriate judgments within ten (10) days.

---

4. In *Branch, supra,* the secured creditor filed its complaint for relief from stay under § 362(d)(2) *prior* to confirmation. The § 362 hearing was held at the same time as the confirmation hearing. The Court found that the debtor had no equity in the property, granted relief from the automatic stay, and denied confirmation of the plan.