**In re Floyd BARNES, Jr., Debtor.**

**Bankruptcy No. 90–09517.**

United States Bankruptcy Court,
E.D. Michigan.

March 14, 1991.

MEMORANDUM OPINION ON GMAC'S
MOTION FOR RELIEF FROM
THE STAY

ARTHUR J. SPECTOR, Bankruptcy Judge.

### FACTS

The facts of this case are simple and fit a familiar pattern. On June 11, 1990, Floyd Barnes, Jr. (Debtor) filed his voluntary petition for relief under chapter 13 of the Bankruptcy Code. The Debtor's plan was confirmed without objection on October 19, 1990. The plan provided that the Debtor would continue land contract payments on his home through the trustee's office and that pre-petition arrears under the land contract would be paid with interest within 24 months following confirmation of the plan. The plan further provided that after the land contract default had been cured, General Motors Acceptance Corporation (GMAC) would begin receiving payment on its loan to the Debtor for the purchase of a 1989 Oldsmobile automobile.

On January 4, 1991, GMAC filed a motion for relief from the stay and/or adequate protection in which it alleged:

(5) That [GMAC] agreed with said plan as submitted, with the understanding that [GMAC] would receive monthly payments from the Chapter 13 Trustee.

(6) That [GMAC] has been informed by the Chapter 13 Trustee that due to the amount of the mortgage [sic] arrearages that [GMAC] will not receive any funds for another five (5) months.

(7) That [GMAC's] security is a 1989 Oldsmobile vehicle, and that the vehicle is depreciating due to use and/or misuse, and that Debtor's plan does not adequately protect [GMAC].

(8) That [GMAC] requests this Court to enter an Order, directing Debtor to amend his plan to provide adequate protection payments to [GMAC], or that [GMAC] be granted Relief from Stay.

The Debtor responded to the motion, in pertinent part, as follows:

(5) ... GMAC did not object to the plan. GMAC received a copy of the plan as did all other creditors. The plan is very clear in stating that the arrearage on the Land Contract would be cured before payments were sent to GMAC. The body of the plan states this would be the case as well as the attachments to the plan which indicate the payments to GMAC would begin approximately in the seventh (7th) month of the plan and run through the fifty-eighth (58th) month of the plan....

(8) ... GMAC had its opportunity prior to the October 18, 1990, Confirmation Hearing to request that the plan provide for monthly adequate protection payments. It would be improper for the plan to be dismissed at this time because GMAC does not like to wait another few months before receiving plan payments.

The Court finds that the allegations made by the Debtor in his response to GMAC's motion are accurate. The plan clearly explained that payments to GMAC would not be made for several months (actually up to 24 months) after confirmation of the plan. In addition, an attachment to the plan, which set forth in greater detail the effect of the plan upon individual creditors, clearly explained that GMAC would receive 28 monthly payments on its secured claim commencing on the seventh month after confirmation.

Upon confirmation, the terms of the plan became binding on GMAC and all other creditors. 11 U.S.C. § 1327(a). GMAC has made no allegation of fraud, deceit, or

trickery on the part of the Debtor in proposing or obtaining confirmation of the plan. We therefore conclude that there is nothing unfair or inequitable about holding GMAC to the terms of the plan.

Because the Court has recently seen so many motions of this type (with a disproportionate number of them emanating from GMAC), we take this opportunity to alert counsel that this is not an issue which is subject to serious debate. Our holding is in accord with an earlier opinion in this district, *In re Willey,* 24 B.R. 369, 374–75, 9 B.C.D. 1002 (Bankr.E.D.Mich.1982), as well as a good number of other cases. *See, e.g., In re Evans,* 30 B.R. 530, 10 B.C.D. 1071, 9 C.B.C.2d 123 (9th Cir.B.A.P.1983); *In re Guilbeau,* 74 B.R. 13 (Bankr.W.D.La. 1987); *In re Davis,* 64 B.R. 358 (Bankr.S.D. N.Y.1986); *In re Hebert,* 61 B.R. 44 (Bankr.W.D.La.1986); *In re Clark,* 38 B.R. 683 (Bankr.E.D.Pa.1984); *In re Blair,* 21 B.R. 316 (Bankr.S.D.Cal.1982); *In re Hackney,* 20 B.R. 158, 9 B.C.D. 125 (Bankr.D. Idaho 1982); *In re Flick,* 14 B.R. 912, 918, 5 C.B.C.2d 494 (Bankr.E.D.Pa.1981); *In re Moore,* 13 B.R. 914 (Bankr.D.Or.1981); *In re Lewis,* 8 B.R. 132, 137, 7 B.C.D. 105 (Bankr.D.Idaho 1981); *see also 5 Collier on Bankruptcy* ¶ 1327.01 (15th ed. 1990).[1] Unless counsel proffers "a good faith argument for the extension, modification, or reversal of [this] existing law," Bankruptcy Rule 9011(a), sanctions will be considered in the event a similar motion is filed in the future.

█ Another independent ground for the motion was that the vehicle was not insured and so GMAC's secured claim was not adequately protected. At the preliminary hearing on this motion the Debtor conceded this point. Accordingly, cause exists for relief from the stay. 11 U.S.C. § 362(d)(1). An order lifting the stay to enable GMAC to repossess the Oldsmobile automobile will enter.

---

1. Although chain citing is generally discouraged, we do so here to demonstrate how thoroughly settled this issue has become.