**In the Matter of: Warren C. CHAPPELL and Barbara A. Chappell, doing business as Mister Photographer, Debtors,**

**Appeal of: HOMEBANC, INCORPORATED.**

**No. 91–3116.**

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1992.
Decided Jan. 14, 1993.

Wesley E. Lindberg (argued), Craig P. Thomas, Reno, Zahm, Folgate, Lindberg & Powell, Rockford, IL, for Homebanc, Inc.

Mary P. Gorman (argued), O'Brien, Healy, Wade & Gorman, Rockford, IL, for Warren C. Chappell and Barbara A. Chappell dba Mister Photographer.

Before COFFEY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Homebanc, Inc. (Homebanc) appeals from the bankruptcy court's order requiring it to release a lien against certain real property. The lien secured an obligation of the debtors, Warren and Barbara Chappell (the Chappells). The bankruptcy court concluded that the debt that Homebanc held was discharged by the Chappells' completion of their Chapter 13 bankruptcy plan. The district court denied Homebanc's appeal and affirmed the bankruptcy court's decision. For the following reasons, we also affirm.

# I

## BACKGROUND

### A. *Facts*

On June 14, 1985, the Chappells filed a voluntary petition for bankruptcy relief under Chapter 13 of the Bankruptcy Code. 11 U.S.C. §§ 101–1330 (1988). On their Chapter 13 statement, the Chappells listed Loves Park Savings and Loan Association (Loves Park), the predecessor to Homebanc, as the holder of two claims secured by real estate located at 536 Grand Avenue, Rockford, Illinois. The first claim was a mortgage on the property in the amount of $4,641.56 ("the first mortgage"). The second claim was for another mortgage on the property in the amount of $20,661.20 ("the second mortgage"). The Chapter 13 plan filed by the Chappells proposed that one hundred percent of these obligations be paid during the course of the bankruptcy plan. The first mortgage was "to be paid 100%, at the rate of $165.77 per month or more for the current payment and $25.00 monthly for the arrearages of $497.31" for a total payment of $4,641.56. Bankr.Ct.Record 5, Chapter 13 Plan. The second mortgage was to "be paid 100% at the rate of $293.00 per month or more for the current payment & $25.00 monthly for the arrearages of $586.00" for a total payment of $20,661.20. *Id.* On July 1, 1985, Loves Park filed two proofs of claims for arrearage amounts owing on both of the mortgages. The first claim was in the amount of $678.08, representing the arrearage on the first mortgage. The second claim was in the amount of $916.50 for arrearage due on the second mortgage. The proofs of claims indicated that the claims were based upon "principal, interest & escrow delinquency through 6–25–85." Bankr.Ct.Record 23, 25.

On July 25, 1985, a meeting of creditors was held pursuant to section 341 of the Bankruptcy Code. *See* 11 U.S.C. § 341. No representative of Loves Park attended the meeting. On that same day, the Chappells' Chapter 13 plan was confirmed, and the Chappells were directed to pay $805 per month to the trustee for distribution under the plan. Subsequently, on September 19, 1985, Loves Park filed amended proofs of claims, adding to the previously claimed arrearages the $4,641.56 figure (for the first mortgage) and the $20,661.20 figure (for the second mortgage) that the Chappells had listed on their Chapter 13 statement. These two figures were identified on the proofs of claims as representing "principal." Bankr.Ct.Record 24, 26. Attached to the proofs of claims were the promissory notes memorializing the first and second mortgages. The bankruptcy court allowed these amended claims, without objection from the Chappells.

The first mortgage was paid in full through the plan, and is not at issue here. The second mortgage, however, is at the center of this appeal. The note memorializing this obligation indicates that the final installment was to become due on August 1, 2009. Therefore, the bankruptcy plan called for the acceleration of this obligation and payment in full during the pendency of the plan. It appears that this was not a commonplace arrangement in a Chapter 13 bankruptcy. In its memorandum opinion, the bankruptcy court cited the Chapter 13 trustee's testimony that he could recall only one or two such provisions during the more than twenty years he had served as a trustee. Bankr.Ct.Mem.Op. at 8.

Apparently, the $20,661.20 figure that the Chappells had listed as due on the second mortgage represented only principal. It did not take into account any interest on the amount that would accrue during the life of the plan. Moreover, in its amended proof of claim, Loves Park had simply listed the principal owed on the obligation and had not made a separate claim for interest. As a result, the trustee applied each payment under the plan solely to the second mortgage's principal and did not make any allowances for Loves Park to receive interest. On August 27, 1986, more than a year after the Chapter 13 plan had been confirmed, Loves Park's attorney wrote the Chappells' attorney (with a copy to the trustee) expressing concern about the plan's treatment of interest on the sec-

ond mortgage.[1] On August 28, 1986, the trustee responded with a letter indicating his willingness to abide by any agreement between the attorneys. But the trustee also stated that he felt that "the time for voicing complaints should have been at the first meeting of creditors, or by an objection to confirmation of the proposed plan." Bankr.Ct.Record 36 at HFX 15. Loves Park's attorney wrote several additional letters to the Chappells' attorney seeking confirmation of whether the payments were solely for principal and also discussing "ongoing problems" with the loan. There is no evidence that the Chappells' attorney ever responded in writing to these letters. The last letter was sent in March 1987. After that time, Loves Park's attorney apparently let the matter lie fallow. On August 15, 1990, the bankruptcy court entered an order closing the case, after it had approved the trustee's report indicating that all claims had been paid in full under the plan and after it had entered a discharge order.

## B. *The Bankruptcy Court and District Court Proceedings*

After the closing of the bankruptcy case, Homebanc, as successor to Loves Park, brought a foreclosure action against the Chappells in Illinois state court, claiming that the Chappells were in default on obli-

gations owed to Homebanc. The Chappells raised an affirmative defense of discharge in bankruptcy, and both parties filed motions seeking relief in the bankruptcy court.

The bankruptcy court reopened the case and held a hearing on the matter. The court found in favor of the Chappells. In its findings, it concluded that

[t]here is no evidence of a scheme by the Debtors to trick or mislead Loves Park Savings. As strange as it may sound, both Mr. Chappell and his original attorney testified that they thought $20,-661.20 constituted payment in full (i.e., 100%). The Debtors intended to pay the claim in full. The Debtors listed the amount to be paid in full as $20,661.20. Loves Park Savings filed an Amended Proof of Claim consistent with that amount. The Note and Mortgage attached to the Proof of Claim do not modify, override, or even clarify the information provided on the Proof of Claim. The Plan was confirmed. The amount listed on the Amended Proof of Claim was paid. A Discharge Order was entered. The debt owed to Loves Park Savings is discharged in these Chapter 13 proceedings.

Bankr.Ct.Mem.Op. at 11–12. The bankruptcy court was also of the view that any entitlement to interest on the debt that

---

1. This letter read in part:

You arranged that not only the delinquency but the entire mortgage amounts be would be [sic] paid through the Chapter 13 plan. I had never seen the mortgage payments paid within the plan, and in my experience only delinquencies were paid within the plan while current payments were always made outside the plan. Nevertheless, with this set-up we filed an Amended Proof of Claim to show the entire mortgage balance after some considerable confusion and trouble resulted from our original filing of a claim for the delinquency only, as is customary practice in such cases.

A recent audit has brought to our attention the situation that the Bankruptcy Trustee is apparently treating each monthly payment made by your clients as 100 percent principal since no claim for interest was filed and approved. We find this incredible. At the time claims are filed, interest to be earned one, two or ten years in the future is not a proper matter for claim and is not to be allowed, yet because you chose to provide for current pay-

ments within the plan rather than outside the plan, we have one more headache in record keeping.

We are not bound by the record keeping of the Trustee's office, which we do not believe is set-up to handle this type of matter, and therefore, we find no fault with the Trustee's office. We find much fault with a Chapter 13 plan providing for current mortgage payments to be made within the plan rather than outside the plan and wish to put you and your clients on notice that despite the Trustee's record keeping, interest accrues from month to month on this loan and our records will reflect that. We understand that Mr. Chappell is under the impression that he owes some $2,000 less than the amount reflected by my client's records, and we herewith put you and your client on notice that we strongly dispute his position. Interest not due at the time a bankruptcy claim is filed is not waived by failure to make that claim, and we reserve our right to that interest.

Bankr.Ct.Record 36 at HFX 11.

section 506(b) of the Bankruptcy Code, 11 U.S.C. § 506(b), may have provided Loves Park and Homebanc was lost by the failure to assert this right before the bankruptcy proceedings closed. As relief, the bankruptcy court ordered Homebanc to release its lien against the real estate securing the second mortgage.

Homebanc appealed this decision to the district court, which affirmed. In a memorandum opinion and order, the district court began its analysis by addressing a legal argument that Homebanc had raised below, but that the bankruptcy court had not addressed—whether the second mortgage was not discharged completely because it was a long-term debt of the type specified under 11 U.S.C. § 1322(b)(5). The court concluded that

> [i]n the present case, Debtors did not avail themselves of the provisions of Section 1322(b)(5) providing for the curing of a default within a plan when the last payment is due after the due date of the final payment under the plan. Debtors proposed to pay 100% of the debts owed to Loves Park Savings during the life of their Chapter 13 Plan. Debtors may choose to pay debts in full or on a percentage basis during the life of a plan regardless of when the last payment on the debt was actually due.... Accordingly, Appellant's argument that the debt was not discharged must fail.

Dist.Ct.Mem.Op. at 7. With regard to Homebanc's argument that it was entitled to interest under section 506(b), the district court agreed with the bankruptcy court that Homebanc's failure to raise this issue earlier bars relief now.

## II

## ANALYSIS

Homebanc brings alternative challenges to the bankruptcy court's ruling. It alleges first that the court erred when it refused to find that the Chappells' treatment of the second mortgage conformed with 11 U.S.C. § 1322(b)(5) and that the debt therefore was not discharged when the Chappells emerged from bankruptcy. In the alternative, it claims that

the district court erred in finding that it had lost any claim to interest under section 506(b) by not objecting during the course of the bankruptcy proceedings. We shall deal with each of these issues in turn. This court exercises de novo review of the district court's and the bankruptcy court's conclusions of law. *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir.1992); *Matter of Seibert*, 914 F.2d 102, 104–05 (7th Cir.1990). Findings of fact made by the bankruptcy court are reviewed under a clearly erroneous standard. *Matter of Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989); *First Wisconsin Nat'l Bank of Milwaukee v. Federal Land Bank of St. Paul*, 849 F.2d 284, 286 (7th Cir.1988).

### A. *Operation of Section 1322(b)(5)*

Homebanc first argues that the second mortgage was never discharged when the Chappells emerged from bankruptcy and that therefore its claim for interest on the loan is still valid. In making this argument, Homebanc relies on the interaction of two provisions of the Bankruptcy Code, sections 1328(a)(1) and 1322(b)(5).

Section 1328 deals generally with a Chapter 13 debtor's discharge. It states, in part:

> (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, ...

11 U.S.C. § 1328(a). However, a subsection of that provision, section 1328(a)(1), excepts from discharge "any debt— ... provided for under section 1322(b)(5) of this title." 11 U.S.C. § 1328(a)(1).

Section 1322 concerns generally the contents of a Chapter 13 plan. One of its subsections, section 1322(b)(5), states that

> (b) Subject to subsections (a) and (c) of this section, the plan may—

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due ...

A leading authority has described the operation of these two provisions in the following way:

The debtor is permitted to include a provision in the chapter 13 plan proposing to cure any default and to maintain payments during the pendency of the chapter 13 case on any claim, secured or unsecured, on which the last payment is due after the due date of the final payment under the plan.

Section 1322(b)(5) is concerned with relatively long term debt, such as a security interest or mortgage debt on the residence of the debtor. It permits the debtor to take advantage of a contract repayment period which is longer than the chapter 13 extension period, which may not exceed five years under any circumstances, and may be essential if the debtor cannot pay the full allowed secured claim over the term of the plan....

A long term debt dealt with by the chapter 13 plan in the manner authorized under section 1322(b)(5) is excepted from any discharge granted under section 1328, and the creditor's lien remains intact, except to the extent it may have been declared void pursuant to section 506(d).

5 Lawrence P. King, et al. *Collier on Bankruptcy* ¶ 1322.09[1] (1992) (footnotes omitted) (hereinafter *Collier*). The language of section 1322(b)(5) is discretionary, and a debtor may choose to treat a long-term debt in accordance with its terms. *See Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1226 (8th Cir.1987) ("A debtor may, but is not required to, provide for his long-term debts by using this provision."); *In re Ali*, 63 B.R. 591, 593 (Bankr. E.D.Wis.1986) (stating that the section is permissive in nature). Pursuant to that section, "[n]ot all long-term debts are entitled to be excepted from discharge ... but only those debts which the debtor wishes to continue treating as long-term debts." *In re Smith*, 8 B.R. 543, 547 (Bankr.D.Utah 1981).

As noted above, the plan filed by the Chappells proposed that the second mortgage "be paid 100% at the rate of $293.00 per month or more for the current payment & $25.00 monthly for the arrearages of $586.00" for a total payment of $20,661.20. Bankr.Ct.Record 5, Chapter 13 Plan. Homebanc argues that this treatment of the debt conformed with the requirements of section 1322(b)(5) and that it therefore was excepted from discharge by operation of section 1328(a)(1). In making this argument, Homebanc relies upon the undisputed fact that the final installment on the mortgage was due in 2009—long after the planned termination of the Chapter 13 plan—and thus that the mortgage was the type of debt to which the Chappells could have applied section 1322(b)(5) if they had wished. *See* 11 U.S.C. § 1322(b)(5) (stating that the provision may be applied to debts when "the last payment is due after the date on which the final payment under the plan is due").

The Chappells argue that their plan did not avail itself of section 1322(b)(5) simply because it proposed paying 100 percent of the second mortgage over its five-year term. Consequently, the plan did not "maintain" current monthly payments, but instead modified the repayment schedule. Homebanc counters by pointing out that the plan required payments of "$293.00 per month or more for the current payment." Picking up on the language "for the current payment," Homebanc asserts that because the plan contained provisions for making regular monthly mortgage payments as they came due, it therefore met the requirements of the statute. *See Landmark Fin. Servs. v. Hall*, 918 F.2d 1150, 1153 (4th Cir.1990) (stating that section 1322(b)(5) requires that "regular mortgage payments be maintained"); *see also Sapos v. Provident Inst. of Sav.*, 967 F.2d 918, 927–28 (3d Cir.1992) (stating that in applying section 1322(b)(5), courts must as-

sure that the debtor's plan both cures arrearages and maintains payments).

We agree with the Chappells that their plan did not avail itself of section 1322(b)(5).

> When a default on a mortgage or other long term debt is cured under section 1322(b)(5), the full amount of the creditor's claim is not paid during the chapter 13 cases. Rather, the debtor preserves the benefit of a longer payment schedule which extends beyond the due date of the last payment under the plan, and the creditor is protected by the exception to discharge for long term debts on which defaults are cured.

*Collier* at ¶ 1322.09[4] (1992); *see also Sapos*, 967 F.2d at 922 (the "cure-and-maintain option" of section 1322(b)(5) "gives the debtor an alternative to cramming down the creditor's claim and paying it off within the chapter 13 plan."); *In re Epps*, 110 B.R. 691, 707 (E.D.Pa.1990) (same). In this case, the Chappells' plan clearly did not take advantage of the contract repayment period of the second mortgage. Instead, it proposed accelerating the second mortgage and paying it in full during the five years in which the plan was in effect. *See* Bankr.Ct.Record 4, Chapter 13 Statement at 6 (noting that with respect to the second mortgage "DEBTORS PROPOSE TO PAY THE ABOVE CREDITORS 100% THROUGH Chapter 13 Plan."); *see also* 11 U.S.C. § 1325(a)(5)(B)(ii) (stating that a requirement for confirmation of a chapter 13 plan is that the plan provide the holders of allowed secured claims an amount "not less than the allowed amount of such claim"); *In re Hayes*, 111 B.R. 924, 926–27 (Bankr. D.Or.1990) (under sections 1322(b)(5) and 1325(a)(5) a debtor dealing with a secured claim may either "leave the contract intact ... or alter the terms and pay the present value of the secured claim"). The plan altered the regular monthly payment schedule on the mortgage by repaying the debt in full some nineteen years before it was scheduled to end. As a result, the Chappells did not choose to treat the second mortgage in accordance with section 1322(b)(5), and Homebanc's argument that the debt was exempted from discharge by

operation of section 1328(a)(1) therefore must fail.

### B. *Homebanc's Claim Under Section 506(b)*

In the alternative, Homebanc argues that it should receive interest on the second mortgage under 11 U.S.C. § 506(b), which provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

This provision allows the holder of an oversecured claim—that is, a claim for an amount less than the value of the property securing it—to recover interest and fees, in addition to the prepetition amount of the claim. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239–40, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). In this case, the parties assume that Homebanc's claim on the second mortgage is one for which section 506(b) would provide interest. The Chappells' Chapter 13 statement values the real property securing the second mortgage at $29,000, which is several thousand dollars more than the amount the Chappells owed on the obligation. *See* Bankr.Ct.Record 4, Chapter 13 Statement at 8.

Homebanc claims that it is entitled to this interest because the Chappells' plan promised to pay "100 percent" of the second mortgage and that necessarily a part of this promise to pay one hundred percent of the debt was a promise to pay the interest allowed by section 506(b). Appellant's Br. at 16–17. Consequently, "[d]ebtors failed to comply with the terms of the confirmed Chapter 13 Plan because they did not pay one hundred percent (100%) of the secured claim of Loves Park as the Plan provides." *Id.* at 16. The bankruptcy court and the district court denied this claim on the ground that it was untimely.

Despite the fact that section 506(b) may have entitled Homebanc to interest, the courts reasoned that Homebanc lost any entitlement when it failed to raise this issue until after the Chapter 13 plan had been completed, the Chappells discharged, and the case closed. The district court wrote:

> The Chapter 13 Plan stated that Debtors would pay Loves Park Savings "100% at the rate of $293.00 per month or more for the current payment & $25.00 monthly for the arrearages of $586.00 ... $20,661.20." If this was unsatisfactory to Loves Park Savings, it should have objected to this provision of the Chapter 13 Plan. Instead, Loves Park Savings failed to attend the Section 341 meeting and also failed to file an objection to confirmation of the Chapter 13 Plan. Failure to object to the confirmation of a Chapter 13 plan is deemed acceptance....
>
> Loves Park Savings didn't even bring the matter to the attention of the bankruptcy court before the court entered the discharge order and closed the case. In other words, Loves Park Savings failed to [do] anything timely in making sure its interests were protected. A confirmed Chapter 13 plan is binding on all creditors provided for within the plan.... Creditors must object to confirmation, appear at hearings or otherwise put disputes before the bankruptcy court in order to raise objections. If the creditor fails to do so, the creditor is bound by the Chapter 13 plan.

Dist.Ct.Mem.Op. at 8–9 (citations omitted).

We agree with the bankruptcy and district courts that the untimeliness of Homebanc's claim under section 506(b) bars it from now obtaining any interest on the second mortgage.[2] The Chapter 13 plan

filed by the Chappells and the proof of claim filed by the initial creditor, Loves Park, both list $20,661.20 as the principal owed on the second mortgage. It is undisputed that the Chappells paid that amount in full through their plan, and received a discharge pursuant to 11 U.S.C. § 1328. Several opportunities were available during the life of the plan to assert the right to section 506(b) interest, but none was taken. No objection was filed, and the plan was confirmed. "The provisions of a confirmed [Chapter 13] plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). As a general rule, the failure to raise an "objection at the confirmation hearing or to appeal from the order of confirmation should preclude ... attack on the plan or any provision therein as illegal in a subsequent proceeding." *Matter of Gregory*, 705 F.2d 1118, 1121 (9th Cir.1983); *accord In re Szostek*, 886 F.2d 1405, 1413 (3d Cir.1989); *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266–67 (10th Cir.1988); *In re Rincon*, 133 B.R. 594, 596 (Bankr.N.D.Tex.1991) (collecting cases); *In re Barnes*, 125 B.R. 484, 485–86 (Bankr. E.D.Mich.1991) (collecting cases); *In re Blair*, 21 B.R. 316, 317 (Bankr.S.D.Cal. 1982) (applying rule to claim for interest under section 506(b)). *But see In re Simmons*, 765 F.2d 547, 555–56 (5th Cir.1985) (although secured creditor did not object to Chapter 13 plan's confirmation, his statutory lien remained in effect when debtor did not object to creditor's proof of secured claim).

It is important to note that Loves Park, Homebanc's predecessor, learned that it was not receiving interest on the second mortgage while the plan was still in effect.

---

2. In reaching this conclusion, we leave aside the question of whether, by itself, the failure of Loves Park's proof of claim to state explicitly that it sought interest on the second mortgage waived any rights under section 506(b). We note that in the two cases Homebanc principally relies upon in support of its claim for interest, the creditor explicitly made a claim for interest in its proof of claim. *See In re Fawcett*, 758 F.2d 588, 590–91 (11th Cir.1985); *In re Wilkins*,

71 B.R. 665, 668 (Bankr.N.D.Ohio 1987); *see also Collier* at ¶ 506.05 at 54–55 (1992) (noting that it is unclear whether a request for interest under section 506(b) must be made explicit in a proof of claim, and suggesting that "any secured creditor intending to seek allowance of postpetition amounts under section 506(b) would be well-advised to make that fact clearly known in its proof of claim").

Yet, no effort was made to bring this fact to the attention of the bankruptcy court. Instead, Homebanc sought relief only after the Chappells were discharged and the case was closed. *See* 11 U.S.C. § 1328(a) (stating that discharge under Chapter 13 discharges "all debts provided for by the plan"). The bankruptcy court explicitly found that there was no evidence of a scheme by the Chappells to trick or mislead, and Homebanc does not challenge that finding on appeal. *Cf.* 11 U.S.C. § 1328(e), 1330(a) (stating that a bankruptcy court may revoke a Chapter 13 discharge or confirmation order if the discharge or confirmation was procured by fraud); *see also Matter of Pence*, 905 F.2d 1107, 1110 (7th Cir.1990) (noting that a debtor's plan may be revoked if fraudulent intent can be shown). Homebanc cites no case that would persuade us to grant it relief in this situation, when no timely measures were taken to remedy an innocent mistake. Judge Wood's comment in an analogous context applies equally to this case:

> Creditors, especially lending institutions ..., must follow the administration of the bankruptcy estate to determine what aspects of the proceeding they may want to challenge.... [The bank] was not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings.

*Pence*, 905 F.2d at 1109 (citations omitted); *see also Taylor v. Freeland & Kronz*, —— U.S. ——, —— – ——, 112 S.Ct. 1644, 1648–49, 118 L.Ed.2d 280 (1992) (trustee lost right to challenge exemption claimed by debtor, even when there was no colorable basis for the exemption, when he failed to object within time limit imposed by Bankruptcy Rules).

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed. The Chappells may recover their costs in this court.

AFFIRMED.