**In re Joseph Lewis DUGGINS, Debtor.**

No. 00–84117.

United States Bankruptcy Court, C.D. Illinois.

June 12, 2001.

Spencer Lee Daniels, Peoria, IL, for debtor.

## OPINION

THOMAS L. PERKINS, Bankruptcy Judge.

The value of a secured creditor's collateral in a Chapter 13 case is typically deter-

mined through the plan confirmation process. The debtor's plan usually states a secured claim amount, based upon an estimation of the value of the collateral. If the secured creditor agrees with the proposed valuation, it need take no action and both parties will be bound by the valuation when the plan is confirmed. If the creditor believes that the plan understates the value of its collateral, the creditor may object to confirmation and request a valuation hearing. The question here is whether a secured creditor who fails to object to a plan that is then confirmed, may avoid being bound by the plan's valuation simply because the creditor filed a pre-confirmation proof of claim stating a value for its collateral greater than that contained in the plan, to which the debtor did not object until after confirmation.

The facts are easily summarized. The Debtor, Joseph Lewis Duggins (DEBTOR), filed his Chapter 13 petition on December 21, 2000, and scheduled Sears (SEARS) as a secured creditor holding a security interest in a projection television valued at $500.00, securing a total debt of $2,374.00. The Chapter 13 Plan filed by the DEBTOR proposed that SEARS would be treated as follows:

> Sears to be paid $500.00 at nine percent (9%) interest secured by a Television, the remaining balance shall be unsecured.

The confirmation hearing took place on January 22, 2001. SEARS neither appeared at the confirmation hearing nor filed a written objection to confirmation of the proposed Plan. SEARS had, however, filed a proof of claim on January 19, 2001, three days prior to the confirmation hearing.[1] In its proof of claim, SEARS states that the total amount of the debt at the time that the case was filed was $2,374.98 and that the value of its collateral, a projection television, was $819.99. At the confirmation hearing, the Court confirmed the Plan as proposed by the DEBTOR providing SEARS with a secured claim of $500.00.

On February 5, 2001, the DEBTOR filed an objection to the proof of claim filed by SEARS to the extent that the secured claim amount exceeded the $500.00 amount provided by the confirmed Plan. SEARS filed a timely response to the DEBTOR'S objection to its claim and the Court conducted a hearing. The parties agreed that there is no disputed issue of material fact and that the primary question of law is whether SEARS is bound by the amount of its secured claim provided in the confirmed Plan even though it had filed a pre-confirmation proof of claim with a higher secured claim amount. If SEARS is not bound, there is a resulting issue as to the effect of its proof of claim. The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B), (L) and (O).

■ In Chapter 13 cases, it is necessary to determine the amount of secured claims that are to be paid through the plan,[2] prior to or in conjunction with confirmation. 'In most cases, until the monthly payment amount to be paid on account of each allowed secured claim is known, the court will not be able to determine whether the plan is feasible, 11 U.S.C. § 1325(a)(6), or

---

1. Since the proof of claim was filed on the Friday before a Monday confirmation hearing, it was actually filed one (1) business day prior to the hearing.

2. Payments "through the plan" are those disbursed by the Chapter 13 trustee from the monies paid to the trustee by the debtor. Payments "outside the plan" are those made directly from the debtor to the creditor. Regular post-petition mortgage payments, for example, are routinely paid outside the plan. *See* 11 U.S.C. § 1322(b)(5).

whether the plan provides that each secured creditor will be paid the present value of its allowed secured claim, 11 U.S.C. § 1325(a)(5). Given the necessity of determining the amount of each allowed secured claim before confirmation, this Court expects Chapter 13 plans to state a secured claim amount and proposed interest rate for each secured claim to be paid through the plan.

Secured claim determination does not always focus on valuation of collateral. Where the value of the creditor's collateral is equal to or exceeds the amount of the secured debt, the amount of the creditor's fully secured claim is equal to the balance of the debt. The focus is on the amount owed. The actual value of the collateral compared to the lesser debt amount, i.e., the debtor's equity amount, is not relevant to determining the amount of the allowed secured claim. Where the value of the creditor's collateral is less than the amount of its debt, so that the creditor is undersecured, the amount of the creditor's allowed secured claim is equal to the value of its collateral, in which event valuation is the focal point. The total debt must be bifurcated pursuant to 11 U.S.C. § 506(a) into a secured claim equal to the replacement value of the collateral, with the balance of the debt classified as unsecured. *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

A confirmed Chapter 13 plan is "like a court-approved contract or consent decree" that binds all parties. *In re Harvey*, 213 F.3d 318, 321 (7th Cir.2000). The plan confirmation process in some respects is a negotiation between the debtor and his creditors. The plan is the initial offer that constitutes the debtor's proposal for how all creditors will be treated. The plan's statement of a secured claim amount is part of the debtor's offer to that particular creditor. The creditor may either accept the offer, by doing nothing, or may make a counteroffer, by filing an objection to the plan that proposes, for example, a higher collateral value if the creditor is undersecured. In many cases, the creditor will negotiate a compromise with the debtor, the terms of which will be included in an amended plan, which, when filed, becomes the operative plan, the debtor's revised offer. *See* 11 U.S.C. § 1323.

Unlike a negotiation to buy a house, for example, where offers expire, or are deemed rejected, unless affirmatively accepted by a date and time certain, the debtor's plan is an offer that is deemed accepted unless objected to prior to confirmation. *See* Fed.R.Bank.P. 3015(f); *Matter of Chappell*, 984 F.2d 775, 782 (7th Cir.1993). Even if the creditor disagrees with the treatment of its claim in a plan, once the plan is confirmed, the creditor is bound by its terms. 11 U.S.C. § 1327(a).

Although it is permissible for the amount of a secured claim to be determined pursuant to a motion filed under Fed.R.Bankr.P. 3012, because the confirmation process proceeds quickly in Chapter 13 cases, such motions offer no time advantage and are rarely filed. Where the creditor is oversecured, the amount of its allowed claim under 11 U.S.C. § 502 is identical to the amount of its allowed secured claim under 11 U.S.C. § 506(a). In that event, where the issue is the amount of the debt and not the value of the collateral, it is permissible for the amount of a secured claim to be determined through the claims allowance process. Here again, because of the expedited confirmation process in Chapter 13 cases, claims litigation almost always postdates confirmation. In this Court, confirmation hearings occur on the same day as the meeting of creditors, usually four to six weeks after the case is filed. Unless confirmation is unusually de-

layed, it is not possible to conclude claims litigation prior to confirmation. Accordingly, secured claim determination almost always occurs as part of the plan confirmation process.

In the case at issue, it is undisputed that SEARS is undersecured and that bifurcation pursuant to 11 U.S.C. § 506(a) is necessary. The question is whether its secured claim will be valued at $500.00 as provided in the confirmed plan, or $819.99 as stated in its proof of claim. SEARS claims it is not bound by the confirmed plan since it filed its proof of claim prior to confirmation and the debtor did not object to the claim until after confirmation.

■ In general, where the binding effect of a confirmed Chapter 13 plan is disputed by a creditor, courts engage in a two-part inquiry. First, the creditor must have received adequate notice that its rights would be modified by the plan's treatment of its claim. *In re Durham,* 260 B.R. 383 (Bankr.D.S.C.2001). Second, the nature of the modification must be of a kind appropriate for determination through the plan confirmation process or in a contested matter, as opposed to the kind of issue requiring an adversary proceeding. *Matter of Beard,* 112 B.R. 951 (Bankr.N.D.Ind.1990); *Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995). If both questions are answered in the affirmative, the confirmed plan should be accorded the *res judicata* effect mandated by Section 1327(a).

■ SEARS does not allege improper or inadequate notice. The DEBTOR properly scheduled SEARS as a secured creditor on Schedule D and listed SEARS, by name and address, on the matrix of creditors filed with the petition on December 21, 2000. The "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines," along with a copy of the Plan and proof of claim form, was mailed to SEARS on December 23, 2000.[3] The Notice stated that the first meeting of creditors would be conducted on January 22, 2001, at 12:30 p.m., followed by the confirmation hearing at 2:00 p.m.[4] Despite proper notice, SEARS did not attend the first meeting or confirmation hearing and did not file an objection to confirmation of the Chapter 13 Plan.

Neither does SEARS allege that valuation of a secured claim is not appropriate for the plan confirmation process. Determination of a secured claim amount is unquestionably an appropriate part of the plan confirmation process even though alternative valuation procedures exist. *Matter of Pence,* 905 F.2d 1107 (7th Cir.1990); *In re Wolf,* 162 B.R. 98 (Bankr.D.N.J. 1993); *In re Hudson,* 260 B.R. 421 (Bankr. W.D.Mich.2001).

Since SEARS was given proper notice and opportunity to object to the DEBTOR'S Plan but did not do so and since valuation of a secured claim is properly determined through the plan confirmation process, the binding effect of the con-

**3.** Fed.R.Bankr.P. 2002 requires at least 20 days notice of the meeting of creditors and at least 25 days notice of the hearing to confirm a Chapter 13 Plan. Both time requirements were satisfied here.

**4.** This Court is aware that the procedures followed in Chapter 13 cases vary widely among the bankruptcy courts. It has been the custom and practice for many years in this Court to hold a confirmation hearing in every Chapter 13 case at which the debtors and their attorney are required to appear. The first meetings are scheduled on the same day as confirmation, within a 1½ hour time slot preceding the confirmation hearings. Because the confirmation hearing occurs immediately following the first meeting, this Court permits creditors to assert an objection to a plan orally at the confirmation hearing, with a written objection to be filed thereafter.

firmed plan pursuant to Section 1327(a) should preclude any subsequent consideration or different disposition of the valuation issue.

SEARS argues, however, that because it filed a pre-confirmation proof of claim, it could ignore the confirmation process, but that the DEBTOR could not ignore its proof of claim, with the result being that the collateral value stated in its proof of claim overrides the lesser value stated in the plan and confirmation order. Since the DEBTOR failed to object to SEARS' claim before confirmation,[5] SEARS contends that not only is it *NOT BOUND* by the confirmed Plan, but that the DEBTOR *IS BOUND* by the secured claim value stated in its proof of claim. SEARS focuses on the "deemed allowed" clause of Section 502(a) of the Bankruptcy Code which provides:

A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a).

■■■ The deemed allowance of a filed proof of claim is at most, conditional, lasting only until a party in interest objects. Once an objection is filed, the claim is no longer deemed allowed, but is subject to determination as a contested matter.[6] *In re America's Shopping Channel, Inc.,* 110 B.R. 5 (Bankr.S.D.Cal.1990). The "allowed" status of the claim has no further

force or effect once an objection is filed. The proof of claim does have a continuing evidentiary effect. Rule 3001(f) provides:

(f) *Evidentiary Effect.* A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

■■■ Even the evidentiary effect is, however, limited to the claim's "validity and amount" which does not include an asserted value of collateral.[7] *In re Hudson,* 260 B.R. at 431. *Hudson* contains a thorough, well-reasoned analysis of the applicable provisions of the Bankruptcy Code and Rules and concludes that the purpose of a proof of claim is to establish the validity and the total, unbifurcated amount of the debt. The bifurcation or valuation process contemplated by 11 U.S.C. § 506(a) is not properly part of the claims allowance process. The *Hudson* court concludes that it is a misconception for a secured creditor to expect that filing a claim establishes the merit and sufficiency of an asserted value of collateral or the appropriate present value interest rate and that something more than merely filing a claim is needed to determine the value of an allowed secured claim under § 506(a). *Id.* at 431.

■■■ Nor is a claim's evidentiary effect conclusive. Construing Section 502(a) together with Rule 3001(f), it is clear that a filed proof of claim gives rise merely to a rebuttable presumption as to the validity and unbifurcated amount of the claim.

---

5. SEARS does not claim that the DEBTOR had actual notice of its proof of claim prior to or at the confirmation hearing.

6. If the objecting party includes an affirmative request for relief of the kind specified in Fed.R.Bankr.P. 7001, the objection should be treated as an adversary proceeding. Fed. R.Bank.P. 3007.

7. The dispute in this case involves the collateral value stated by SEARS in its proof of claim. The DEBTOR is not challenging the validity of his debt to SEARS, the validity of SEARS' security interest, or the unbifurcated amount of SEARS' claim.

Once an objecting party produces evidence rebutting the claim, the burden of proof shifts to the claimant to produce evidence establishing the claim's validity and amount. *In re Gran*, 964 F.2d 822, 827 (8th Cir.1992); *In re Consumers Realty & Development Co., Inc.*, 238 B.R. 418, 422–23 (8th Cir. BAP 1999).

Only allowed claims are entitled to be paid from assets of the bankruptcy estate. *In re Pardee*, 218 B.R. 916, 922 (9th Cir. BAP 1998). The deemed allowance of filed proofs of claim has the practical benefit of alleviating the need for a judicial determination of each and every claim filed in a Chapter 13 case. The bankruptcy court need only become involved when an objection to a claim is filed. This pragmatic mechanism for the automatic allowance of most claims is, in this Court's opinion, the primary purpose of the "deemed allowed" clause of 11 U.S.C. § 502(a).

By contrast, the language of Section 1327(a) is not so ephemeral. The binding effect of a confirmed plan on the debtor and each creditor is clearly unconditional and final "whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). When the language of Section 1327(a), which expressly dictates finality, is compared to the temporary, conditional nature of the "deemed allowed" clause of Section 502(a), it is readily apparent that, if primacy between the two is even an issue, Congress accorded that primacy to a confirmed plan, not to a proof of claim.

SEARS' contention that a proof of claim has a crossover effect to operate as, or in lieu of, an objection to confirmation is not supported by the Federal Rules of Bankruptcy Procedure. Fed.R.Bankr.P. 3015(f) expressly provides for the filing of a written objection to confirmation and for service of the objection on the debtor, the case trustee and the U.S. Trustee, before confirmation of the plan. Proofs of claim are separately addressed under different Rules and are not required to be served by the claimant on any party and, in this Court's experience, are usually not served on the debtor by the claimant.[8] Nothing in the Bankruptcy Code or Rules indicates an intent to permit a proof of claim to serve a dual function as an objection to plan.

■ SEARS' position suffers from practical defects as well. Secured creditors are not required to state a collateral value in their proof of claim and often do not. *See In re Simmons*, 224 B.R. 879, 882 (Bankr.N.D.Ill.1998) ("Although the official Form 10 proof of claim advises secured creditors that their claims may be only partly secured, creditors typically do not break their claims down into secured and unsecured components when submitting proofs of claim"). SEARS' position would necessitate adoption of two different procedures: one for creditors who state a collateral value on their proof of claim and a different one for those who do not, a distinction not provided in the Bankruptcy Code or Rules.

More importantly, allowing the creditor's proof of claim to surreptitiously usurp the debtor's plan with respect to the amount of the creditor's secured claim would effectively deprive other interested parties, including unsecured creditors, of their right to object to a proposed secured claim amount. All parties in interest, including unsecured creditors, have the right to challenge a secured claim valuation. *See* Fed.R.Bank.P. 3012.

---

8. As a matter of policy, the bankruptcy clerk for the Central District of Illinois mails a copy of all claims filed in Chapter 13 cases to the standing Chapter 13 Trustee.

There is good reason why an unsecured creditor in a Chapter 13 case might wish to challenge the proposed amount of a secured creditor's claim. In this Court, virtually all Chapter 13 plans are proposed as "pot plans," not "percentage plans." [9] A pot plan is akin to a zero sum game: the more that secured creditors receive, the less that unsecured creditors receive. Accordingly, unsecured creditors have a financial incentive to see that secured claims are not overvalued. Overvaluation of a secured claim is objectionable since the payment of the undersecured portion of a debt owed to a partially secured creditor at a higher percentage than general unsecured claims constitutes unfair discrimination under 11 U.S.C. § 1322(b)(1) and is impermissible absent an exceptional justification. *Goins v. Diamond Mortg. Corp.*, 119 B.R. 156, 162 (Bankr.N.D.Ill.1990). The debtor does not share such an incentive since the pot he pays into the plan is fixed and is not affected by the relative apportionment between secured and unsecured creditors. Therefore, unsecured creditors cannot rely on the debtor to protect their interest.

Since a copy of the Chapter 13 plan is sent to all creditors, unsecured creditors have notice of and an opportunity to object to the plan's treatment of secured claims. Proofs of claim are not sent to creditors so unsecured creditors are not provided with notice of filed secured claims. While it is true that any creditor may check the court file to determine what claims have been filed, in this Court's opinion, it is neither realistic nor fair to leave unsecured creditors with that as their only option to protect themselves against the possibility of an overvalued secured claim. Because all creditors receive a copy of the Chapter 13 plan but not filed proofs of claim, the plan confirmation process is the preferred procedure for ensuring adequate notice of and opportunity to object to proposed secured claim amounts which affect the amount of money that unsecured creditors receive.

Fundamentally, the issue is one of due process. Things happen quickly in Chapter 13 cases where the confirmation hearing can occur as early as 26 days after the case is filed. *See*, Fed.R.Bankr.P. 2002(b). In the case at bar, confirmation occurred 32 days after filing. With such a compressed time frame and in light of the binding effect of confirmation on the property interests and rights of the parties, bankruptcy courts should be particularly vigilant that the confirmation process is fair and comports with due process requirements. As set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), to have a fair opportunity to protect itself against a binding determination that might adversely affect the interests of a party, notice must be reasonably calculated to bring to the party's attention the nature and substance of the pending determination (i.e., the extent of what might happen if they don't act), and it must afford a reasonable time in which to act. By requiring that the debtor's proposed plan be served on all creditors at least 25 days prior to the confirmation hearing, the Federal Rules of Bankruptcy Procedure incorporate due process protections into the Chapter 13 plan confirmation process.

**9.** A "percentage plan" is a plan which provides that unsecured creditors will be paid a set percentage of their allowed claim, with the amount that the debtor pays determined by the amount of unsecured claims ultimately filed and allowed. A "pot plan" refers to a plan which provides that the debtor will pay a fixed amount or "pot" of money to the Chapter 13 Trustee and the percentage that unsecured creditors receive ultimately depends on the total amount of claims filed and allowed. *See Matter of Witkowski*, 16 F.3d 739 (7th Cir.1994).

Since no service of proofs of claim is required, the design of the Rules is to give no notice of filed claims at all, much less the quality and quantity of notice necessary to satisfy due process considerations.

SEARS' contention effectively permits a secret (or at least non-noticed) amendment of the Plan by allowing collateral values stated in pre-confirmation proofs of claim to preempt values stated in the Plan. Lack of notice of the substitute value vitiates the due process built into the system, implemented by the Rules, that relies on the plan document to provide notice. This is yet another indicator that proofs of claim were not intended to be used as SEARS suggests.

As a practical matter this Court fails to see how a debtor or another creditor could be required to object pre-confirmation when proofs of claim may be filed in the days, hours, even minutes prior to confirmation with no notice to the debtor or other creditors.[10] The position SEARS advocates would permit a creditor to "lay in the weeds" by not objecting to confirmation and instead filing a proof of claim shortly before confirmation and then when the plan is confirmed jumping up and yelling "GOTCHA!" Such a rule would chill the fair and open negotiation between the debtor and creditors that the plan confirmation process encourages.

SEARS cites *Adair v. Sherman*, 230 F.3d 890 (7th Cir.2000) for the proposition that a secured claim value stated in a proof of claim filed before confirmation, is incorporated into a Chapter 13 plan upon confirmation. *Adair* is factually distinguishable.

When Mr. Adair filed his Chapter 13 case in July, 1997, First Midwest Bank held a security interest in a 1995 Chevrolet Lumina automobile. Mr. Adair's plan classified the Bank as a secured creditor but did *not* place a value on the Lumina. Rather, the plan simply provided that all allowed secured claims would be paid in full. *Id.* at 893. In effect, Mr. Adair elected not to raise the valuation issue in his plan, apparently being content with having the issue determined after confirmation. Twelve days prior to confirmation, the Bank filed a proof of claim stating the vehicle's value as $19,841.43, an amount greater than its original purchase price. Although Mr. Adair had notice of the filed claim, he did not object to the Bank's claim prior to confirmation and the plan was confirmed on September 15, 1997.

Nine months later, in June, 1998, Mr. Adair filed an adversary proceeding in the bankruptcy court challenging the Bank's proof of claim. Mr. Adair also filed a class action lawsuit in the U.S. District Court for the Northern District of Illinois against the Bank's attorneys alleging a violation of the Fair Debt Collection Practices Act (FDCPA) based, in part, upon an alleged pattern by the attorneys of overstating the value of vehicles in proofs of claim filed in bankruptcy cases.

Mr. Adair's bankruptcy case was subsequently dismissed, without discharge, on November 30, 1998 and the adversary proceeding was accordingly also dismissed. The district court lawsuit remained pending, however, and the defendants filed a Fed.R.Civ.P. 12(b) motion to dismiss, which was granted.

On appeal, the Seventh Circuit determined that the class action suit was nothing more than a collateral attack on the amount of the Bank's allowed secured

---

**10.** Neither the Bankruptcy Code nor Rules set a deadline for objecting to a proof of claim. An objection to a proof of claim may be filed at any time. *In re Kolstad*, 928 F.2d 171, 174 (5th Cir.1991).

claim, an issue that had been determined in the prior bankruptcy case, and thus was barred by the doctrine of collateral estoppel. The court found that the secured claim amount was the amount stated in the Bank's proof of claim which was filed prior to confirmation and became effective upon confirmation where the plan did not provide a competing value.

Since the plan did not value the Bank's secured claim, *Adair* did not involve a conflict between the value provided in a plan and the value stated in the proof of claim. In fact, it appears that the debtor actually wanted the claim amount to control. The district court's opinion stresses that it was the debtor, Mr. Adair, not the creditor, who was advocating that the unobjected-to proof of claim fixed the claim amount as of confirmation, presumably to establish damages for the FDCPA claim. *Adair v. Sherman,* 1999 WL 117754 (N.D.Ill.1999). That the debtor actually consented to being bound by the proof of claim's value amounts to a reversal of roles that turns the analysis of the plan confirmation process on its head.

*Adair* is not an appeal from a bankruptcy case and it seems that the debtor's contradictory maneuvers in bankruptcy were based on ulterior motives. To this extent, *Adair* is the kind of "unusual case" to be applied as precedent with caution.[11] *See, Department of Air Force v. Rose,* 425 U.S. 352, 382, 96 S.Ct. 1592, 1609, 48 L.Ed.2d 11 (1976) (Berger, C.J., dissenting).

*Adair* stands for the straightforward proposition that once a secured claim amount is determined (by whatever procedure) in a bankruptcy case, that determination cannot be collaterally attacked in a subsequent proceeding. This holding would have been the same regardless of which procedural avenue had been used to determine the claim amount and does not depend on the unusual facts of the prior bankruptcy case. *Adair* does not hold that a secured claim value asserted in a proof of claim preempts a competing value stated in a Chapter 13 plan.

*Adair* is distinguishable for an additional, alternative reason as well. The Seventh Circuit expressly limited its ruling to "the situation in which the creditor filed a proof of claim before confirmation and the debtor had enough time to formulate an objection prior to confirmation." *Adair v. Sherman,* 230 F.3d at 894 n. 4. In the case at bar, SEARS' proof of claim was filed one business day prior to confirmation. This Court is of the opinion that one business day is not enough time to comport with due process requirements.

Moreover, the Seventh Circuit has consistently recognized that the Chapter 13 confirmation process is intended to be an expedited process and that creditors are expected to review the terms of a proposed plan and raise objections at the confirmation hearing. *In re Harvey,* 213 F.3d 318 (7th Cir.2000); *Matter of Pence,* 905 F.2d 1107 (7th Cir.1990); *Matter of Chappell,* 984 F.2d 775 (7th Cir.1993).

---

**11.** In a case in this very context, the Seventh Circuit itself has recognized the need to carefully examine prior decisions to determine if the facts are materially distinguishable from the precedent's facts, quoting from Abraham Lincoln's speech on the Dred Scott Decision, stating:

> As one of this nation's greatest attorneys observed, "Judicial decisions are of greater or less authority as precedents, according

to circumstances. That this should be so, accords both with common sense, and the customary understanding of the legal profession."

*Matter of Pence,* 905 F.2d 1107 at 1110. Aside from the procedural posture of the *Adair* decision, as previously noted, the Chapter 13 plans filed in this Division are not of the *Adair* genre.

In a case decided less than four months prior to *Adair, In re Harvey,* 213 F.3d 318 (7th Cir.2000), the Seventh Circuit succinctly stated the policy reasons why the integrity of the Chapter 13 plan document should be preserved and why the Chapter 13 confirmation hearing is the paramount event in the case where modifications of the rights of creditors are determined with binding effect, as follows:

It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan. 11 U.S.C. § 1327(a). See also *In re Greenig,* 152 F.3d 631, 635 (7th Cir. 1998); *Spartan Mills v. Bank of America Illinois,* 112 F.3d 1251, 1255 (4th Cir.1997); *Chemetron Corp. v. Jones,* 72 F.3d 341, 346 (3d Cir.1995). The reason for this is simple and mirrors the general justification for *res judicata* principles—after the affected parties have an opportunity to present their arguments and claims, it is cumbersome and inefficient to allow those same parties to revisit or recharacterize the identical problems in a subsequent proceeding.

This is especially true in the bankruptcy context, where a confirmed plan acts more or less like a court-approved contract or consent decree that binds both the debtor and all the creditors. Bringing the various creditors' interests to the table once is difficult enough; permitting one of the creditors to launch a later attack on a confirmed plan would destroy the balance of interests created in the initial proceedings.

. . . .

Forcing parties to raise concerns about the meaning of Chapter 13 filings at the original confirmation proceedings does not impose an unreasonable burden on bankruptcy participants. Quite the contrary—it is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are unacceptable, vague, or ambiguous. As this court said in *In re Pence,* 905 F.2d 1107, 1109 (7th Cir. 1990), a creditor is "not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings."

213 F.3d at 321–22. *Harvey* is not even mentioned in the *Adair* opinion. Much of *Adair's* language confirms the Seventh Circuit's view of the importance of the plan document and the plan confirmation process in a Chapter 13 case. The stated conclusion in *Adair* that SEARS relies upon, dealing with the debtor's failure to object to a proof of claim filed prior to confirmation, is rendered in the context of its effect in a post-bankruptcy lawsuit, not in the context of how secured claims are or ought to be determined in Chapter 13 cases. That portion of the opinion should be limited to its unusual facts. For these reasons, this Court rejects the application of *Adair* suggested by SEARS.

 Even if SEARS had filed its proof of claim more than three days prior to confirmation, the effect would be the same as the claims allowance process is not appropriate for determination of the secured claim value of an undersecured creditor like SEARS. *See, In re Durham,* 260 B.R. 383, 389 (Bankr.D.S.C.2001) (the timing of the filing of a creditor's proof of claim, either before or after confirmation, should not make a difference and that "to conclude otherwise would be to conclude that a properly constructed and noticed Chapter 13 plan cannot treat the claim of creditors as provided in § 1322(b)(2)"); *In re Hudson,* 260 B.R. 421, 437–38 (Bankr. W.D.Mich.2001) (when a plan that values a secured claim is confirmed, the debtors and the creditors are bound by that valuation, regardless of whether the creditor

filed a proof of claim stating a higher value before or after confirmation.)

█ The Bankruptcy Code and Rules do not support the proposition that a creditor who files a proof of claim before confirmation can ignore the confirmation process and avoid the binding effect of a confirmed plan that values its collateral. The claims allowance process is not intended to deal with secured claim valuation under 11 U.S.C. § 506(a). There is no support in the Code or Rules for the contention that once a proof of claim is filed by a creditor that states a value for the creditor's collateral, that the claim's value trumps the plan's value or that the claims allowance process thereby becomes the exclusive procedure by which value must be determined.

This Court holds that where a Chapter 13 plan values a secured claim and the plan is confirmed, with or without objection of the secured creditor, the creditor is bound by the plan's value notwithstanding that the creditor filed a proof of claim stating a higher value before confirmation and that no objection to the claim was filed before confirmation. In this case, the Plan valued SEARS' secured claim and the plan confirmation process concluded when the Plan was confirmed. Therefore the confirmed Plan controls the valuation issue and is binding on all parties. In order to preserve an objection to a plan's value, the creditor must object to confirmation of the plan. A filed proof of claim does not suffice.

Because SEARS failed to object to the DEBTOR'S plan and failed to raise the valuation dispute at the confirmation hearing at which the proposed plan was confirmed, the $500.00 value placed on SEARS' collateral in the Plan is a valid, binding and conclusive determination of the amount of SEARS' secured claim. The DEBTOR'S objection to SEARS'

proof of claim which states a higher value is therefore allowed. SEARS shall be allowed a secured claim in the amount of $500.00 to be paid in accordance with the terms of the confirmed Plan and the balance of the debt as stated in the proof of claim shall be allowed as an unsecured claim. A separate Order will be entered.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS HEREBY ORDERED that:

1. DEBTOR'S objection to SEARS' proof of claim is ALLOWED;

2. SEARS shall be allowed a secured claim in the amount of $500.00 to be paid in accordance with the terms of the confirmed Plan; and

3. The balance of the debt as stated in the proof of claim shall be allowed as an unsecured claim.