**In re Douglas HUNT, Debtor.**

No. 02–71649.

United States Bankruptcy Court, C.D. Illinois.

April 15, 2003.

John S. Narmont, Springfield, IL, for Debtor.

Michael D. Clark, Peoria, IL, trustee.

## *OPINION*

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

Before the Court is the motion of Creditor, Heartland Ag., Inc., ("Heartland"), to vacate the order confirming the Second Amended Chapter 12 Plan of the Debtor, Douglas Hunt ("Hunt"). For the following

reasons, the Court GRANTS Heartland's motion to vacate.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are not in dispute. The Chapter 12 case was commenced on April 16, 2002, with the first proposed Chapter 12 Plan filed on July 9, 2002. Heartland, a secured creditor, objected to this plan because as a third mortgagee it felt the mortgaged property was undervalued. Pursuant to an agreement memorialized in an August 30, 2002, letter from Heartland's counsel to Hunt's counsel, the parties agreed to a proposed valuation of the secured property ensuring Heartland would receive the full $68,966.74 value of its secured claim in addition to costs and attorney's fees. In addition, it was agreed that an amended plan would reflect repayment of this sum with interest at eight percent (8%) per year over a period of twenty (20) years. On October 8, 2002 an amended plan was filed.

On October 8, 2002, Heartland received a proposed order confirming Hunt's Chapter 12 amended plan in which the first payment to Heartland was to be made on January 1, 2003, and reflected the other pertinent aspects of the parties' agreement memorialized in the August 30, 2002, letter. However, the Bankruptcy Court did not confirm the October 8, 2002, amended plan, instead requiring Hunt to submit a second amended plan. Importantly, the amendments required by the Bankruptcy Court did not involve Heartland's claims.

Heartland was never provided a copy of the court-ordered second amended plan prior to confirmation, but was notified of the confirmation hearing. However, believing that the agreement between Heartland and Hunt was accurately reflected by the terms of the October 8, 2002, Proposed Amended Plan, and not anticipating this agreement would be modified by the second amended plan, Heartland did not appear at the final confirmation hearing for the second amended plan. The second amended plan was confirmed on October 29, 2002, and timely notice of the confirmed plan was served upon creditors, including Heartland, on November 4, 2002.

Upon reviewing the confirmed second amended plan, Heartland discovered that while other elements of their agreement remained unchanged, its payments were scheduled to begin on January 15, 2004, instead of the anticipated date of January 1, 2003. Consequently, on November 22, 2002, Heartland sent a letter to Hunt's counsel expressing surprise at the January 15, 2004, payment date and requesting that Hunt's counsel change the date to January 1, 2003, to reflect what Heartland believed was the agreed upon date as established by the Proposed Order received on October 8, 2002.

Hunt's counsel declined to amend the confirmed second amended plan stating, in effect, that the only items the August 30, 2002, letter reflected the two parties had agreed upon were the value of the property, the repayment period, and the interest rate. Therefore, Hunt's counsel concluded that the confirmed second amended plan conformed to their agreement and Heartland had waived any right to object to the confirmed second amended plan through its failure to appear at the confirmation hearing.

Because Hunt would not agree to amend the second amended confirmed plan, Heartland brought the instant motion to vacate the Bankruptcy Court's order confirming the second amended plan. In addition to arguing that the second amended confirmed plan accurately reflected the parties' agreement, Hunt contends that Heartland's failure to file a timely appeal to the confirmation order within ten (10)

days as required by Bankr.R. 8002(a) or a motion to alter or amend within ten (10) days as required by Bankr.R. 9023 precluded Heartland's appeal, and that a motion to vacate a confirmed plan outside of this 10 day period must be brought pursuant to Bankr.R. 9024, which Heartland failed to do.

### DISCUSSION

■ It is a well-established element of bankruptcy law that an order confirming a plan is binding on both creditors and debtors, and the Seventh Circuit has long recognized the sanctity of confirmation orders. 11 U.S.C. § 1227; *Matter of Greenig,* 152 F.3d 631, 635 (7th Cir.1998); *Matter of UNR Industries, Inc.,* 20 F.3d 766, 769 (7th Cir.1994); *Holstein v. Brill,* 987 F.2d 1268, 1270 (7th Cir.1993); *Matter of Chappell,* 984 F.2d 775, 782 (7th Cir.1993); *Matter of Pence,* 905 F.2d 1107, 1110 (7th Cir.1990). Nonetheless, exceptions to § 1227 providing for post confirmation modification, such as 11 U.S.C. § 1229, do exist. *In re Taylor,* 99 B.R. 902, 905 (Bankr.C.D.Ill.1989). However, as the holder of a secured claim, Heartland cannot seek post-confirmation modification under § 1229 as the right to proceed under that section is limited to "the debtor, the trustee, or the holder of an allowed unsecured claim." 11 U.S.C. § 1229(a). Revocation of a confirmed plan is also authorized by 11 U.S.C. § 1230, but only if the confirmation order was procured through fraudulent intent, which is not the situation in the instant case.

■ Nevertheless, as Hunt's counsel acknowledges in his brief, Bankr.R. 9024 (incorporating Fed.R.Civ.P. 60) authorizes relief from a final order or judgment on specified grounds. Hunt argues that Heartland should be precluded from the relief authorized by Bankr.R. 9024 due to Heartland's failure to properly specify that its motion was brought pursuant to Bankr.R. 9024. However, the plain language of Fed.R.Civ.P. 60(b) and Bankr.R. 9024 establishes that a court may relieve a party from a final judgment or order upon the filing of a motion without initiating an adversary proceeding, *In re Gledhill,* 76 F.3d 1070, 1078 (10th Cir.1996), and when a moving party fails to specify the rule under which it makes a post judgment motion, the characterization is left to the court. *In re Barger,* 219 B.R. 238, 244 (8th Cir. BAP 1998). Therefore, while Heartland's motion is not specific, the Court elects to characterize the motion as one under Fed.R.Civ.P. 60(b) for relief from judgment pursuant to Bankr.R. 9024.

■ Fed.R.Civ.P. 60(b) provides, "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ... or (6) any other reason justifying relief from the operation of the judgment." The Court finds that Heartland's claim could fall within either Fed.R.Civ.P. 60(b)(1) as surprise or excusable neglect, or under the catch all provision of Fed.R.Civ.P. 60(b)(6). However, relief under the catch-all provision of Fed. R.Civ.P. 60(b) can only be addressed if the grounds for relief do not fit within any of the other provisions of Fed.R.Civ.P. 60(b). *See, Margoles v. Johns,* 798 F.2d 1069, 1073 n. 6 (7th Cir.1986). As a result, the Court will analyze the current facts under the "excusable neglect" rationale of Fed. R.Civ.P. 60(b)(1) because it was the duty of Heartland's attorney to ensure proper treatment of its claim. *Matter of Chappell,* 984 F.2d 775, 782 (7th Cir.1993).

■ While, a motion under Fed. R.Civ.P. 60(b) must be equitably and liberally construed to achieve substantial justice, *see, In re Salem Mortg. Co.,* 791 F.2d

456, 459 (6th Cir.1986); *Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir.1983), a petitioner only warrants relief under Rule 60(b)(1) when he demonstrates that a mistake is attributable to special circumstances and not simply an erroneous legal ruling. *See, McMillan v. MBank Fort Worth, N.A.*, 4 F.3d 362, 367 (5th Cir. 1993). While whether to grant relief under Rule 60(b) is left largely to the trial court's discretion, *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir.1994); *U.S. v. Golden Elevator, Inc.*, 27 F.3d 301, 303 (7th Cir. 1994), in situations in which the failure to comply with a court order is attributable to negligence on the part of the movant, the "excusable neglect" standard is appropriate. *Pioneer Inv. Services Co., v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 394, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Nevertheless, the Seventh Circuit has specifically held that neither ignorance or carelessness on the part of a litigant or an attorney will be grounds for relief under Rule 60(b). *Bershad v. McDonough*, 469 F.2d 1333, 1337 (7th Cir. 1972). Finally, a motion for relief arguing excusable neglect pursuant to Fed.R.Civ.P. 60(b)(1) must be brought within one (1) year of confirmation of the plan, a condition met in this case. *See, Pioneer*, 507 U.S. at 393, 113 S.Ct. 1489.

█ In the absence of direction from Congress, the Supreme Court determined that whether neglect will be determined to be "excusable" requires an equitable determination taking into account all relevant circumstances of the petitioner. *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489. In the context of analyzing whether an attorney's inadvertent failure to file a proof of claim in a Chapter 11 reorganization could constitute "excusable neglect," the *Pioneer* Court included in the "excusable neglect"

analysis: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.* Guided by these factors and considering all relevant circumstances surrounding Heartland's failure to object to the date upon which its payments would begin, the Court determines that Heartland's omission amounts to excusable neglect, if negligence at all, and justifies relief from the Court's previous order confirming Hunt's second amended plan.

First, despite Hunt's protestations about the sanctity of the confirmed plan, relief from the order confirming his second amended plan will cause Hunt very little, if any prejudice. The starting point of the analysis leading to this conclusion is that after only a cursory review by the Court, the confirmed second amended plan does not even appear to be mathematically sound. Hunt's counsel lists payments of $1,144.02, $113.00, $15,177.38, and $7,590.03 to the Trustee, GMAC Mortgage Corp., Farm Service Agency, and Heartland Ag., Inc., respectively. According to Hunt's counsel, this results in a payment total of $22,880.41, when, if added correctly, this amounts to a payment total of $24,024.43. Error of addition is not the only problem with this section of Hunt's second amended plan. The $113.00 Hunt's counsel lists as payment to GMAC is actually what GMAC is owed on a *monthly* basis; the payments for all of the other secured creditors is determined on a *yearly* basis. Therefore, the payment to GMAC should also be calculated on a yearly basis, amounting to an actual figure of $1,356.00, and leaving a total annual payment of $25,267.43, after corrections are made for both the proper amount of GMAC's payment and the mathematical

error. The problem with Hunt's plan does not stop here, however, as Hunt's counsel also miscalculated Hunt's expenses as $94,068.00 when Hunt's actual listed expenses only add up to $84,068.00.

All of these errors, of course, create a problem for the amount Hunt's counsel calculated would be available as estimated dividends to unsecured creditors. While Hunt's counsel determined unsecured creditors would receive dividends of $240.59, applying the correct totals for payments and input costs, Hunt is left with $7,853.57 for dividends to unsecured creditors. This is a highly significant difference of $7,612.98, or over thirty-one (31) times what Hunt's confirmed plan indicated would be available to unsecured creditors.[1]

Additionally, from the Court's review of the October 8th and October 29th plans, and apart from their math errors, there is very little distinguishing the two (2) plans. The second amended plan pays the Trustee $62.15 less annually than the October 8th proposed amended plan and decreases Hunt's living expenses by $10,250. Otherwise, all payments to secured creditors, sources of income, and expenses remain unchanged. Apart from these two (2) distinctions, the only remaining differences are that distribution to undersecured and unsecured creditors are applicable to the years 2003, 2004, and 2005, in the first amended plan and 2004, 2005, and 2006, in second amended plan. Finally, and central to the instant dispute, the October 8th amended plan provides that Heartland's first payment is due on January 1, 2003, versus January 15, 2004, in the second

amended plan. The beginning date of payment for all other secured creditors is January 1, 2003 in both plans.

Because the plans are so amazingly similar, the Court can discern no real reason why it would prejudice Hunt to begin payments to Heartland on January 1, 2003, the date all other secured creditors are paid and as originally provided in the October 8th amended plan. The Court's view that Hunt would not be prejudiced by beginning payment to Heartland on January 1, 2003, is especially strengthened by the fact that debtor's confirmed second amended plan is structured as if Heartland is being paid $7,590.03 in 2003, when it is not, and the second amended plan contains an unaccounted for $7,853.57. These two figures total $15,443.60. Therefore, there would be more than enough ($15,443.60) to cover the payment to Heartland in 2003 ($7,540.03). The Court finds it hard to imagine how Hunt's counsel could contend Hunt would be adversely affected financially by making Heartland's first payment in light of this substantial, and unaccounted for, amount of money.

Further, by vacating the order, there should be very little adverse impact on the judicial proceedings. At most there has been only one (1) payment each to the Trustee and Farm Services Agency and a maximum of four (4) relatively small monthly payments to GMAC totaling $452.00. Unsecured and undersecured creditors are not due to receive their first payment until 2004. None of these obligations would be affected by vacating the

---

1. The confirmed second amended plan actually seems to be part of a trend of mathematical errors. The October 8th proposed amended plan also miscalculated Hunt's expenses by $3,000. As a result, instead of leaving unsecured creditors with estimated dividends of $541.42, Hunt's amended plan carried a negative balance of $2,458.58 which would not

leave enough money to meet Hunt's $18,250.00 estimated living expenses. Regarding Hunt's living expenses, the Court notes that Hunt man aged to pare his expenses by $10,250.00 from the time of his October, 8, 2002, proposed amended plan to his October 29, 2002, confirmed second am ended plan.

order confirming the October 29th second amended plan.

There was also very little delay by Heartland in bringing its motion. Three weeks after receiving a copy of the confirmed second amended plan, and more than a month before any payments were to begin under the second amended plan, Heartland notified Hunt's counsel of what Heartland believed to be an incorrect date for the start of its payments under the plan. After Hunt's counsel informed Heartland that the later date in the October 29th second amended plan was intentional and would not be voluntarily corrected, Heartland brought the instant motion on December 19, 2002.[2] This minor delay is reasonable, especially in light of Heartland's reasonably held belief that the date its payments were to begin would not change from the October 8th proposed amended plan, and the reasonable assumption upon finding the change that it was nothing more than a clerical error amenable to quick and easy correction.

Finally, the Court acknowledges that it is a creditor's responsibility to ensure proper treatment of its claims in a debtor's plan, which would include making any relevant objections at a plan's confirmation hearing. *Matter of Chappell*, 984 F.2d at 782. However, as demonstrated by the October 8th proposed amended plan, both Heartland and Hunt had agreed upon the terms and conditions of the treatment of Heartland's claim. Further, Hunt does not argue that the failure of the confirmation of the October 8th proposed amended plan had anything to do with Heartland's claim. While it was technically negligent for Heartland not to ensure the treatment of its claim was unchanged, Heartland had

no reason to believe its claim would be altered, especially considering Hunt's counsel never bothered to serve Heartland's counsel with a copy of the October 29th second amended plan.

While the issue is not raised by Heartland and need not be decided for purposes of this motion, the failure to serve Heartland's counsel with a copy of the second amended plan could, in and of itself, provide sufficient reason to revoke the order confirming Heartland's second amended plan due to a violation of Heartland's Fifth Amendment right to due process. *See, In re Linkous*, 990 F.2d 160, 162 (4th Cir. 1993) ("[A] bankruptcy court confirmation order generally is treated as *res judicata*. However, we cannot defer to such an order on *res judicata* grounds if it would result in a denial of due process in violation of the Fifth Amendment of the United States Constitution.") In order to meet the requirements of due process whereby a proceeding is accorded finality, the United States Supreme Court has noted that required notice is "notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

In the instant case, the Court does not believe Heartland received adequate notice its claims would be altered by the October 29, 2002, second amended plan. Based on the totality of the circumstances, it is entirely reasonable for Heartland to have believed its claim would not be altered from the treatment it received in the October 8th proposed amended plan. Heart-

---

**2.** Heartland's supporting memorandum of law was filed several days late, however finding good cause to support the late filing and because the late filing of the memorandum of law is not contested by Hunt, the Court grants Heartland's Motion for leave to file its supporting memorandum of law late.

land had reached an agreement with Hunt, the terms of which Heartland reasonably believed were expressed in the proposed amended plan. When the Court ordered this plan to be amended a second time for reasons entirely unrelated to their claim, Heartland justifiably believed their claim would remain unchanged from the proposed amended plan. In Heartland's view, this assumption would have only been further reinforced by Hunt's failure to provide them with notice that their claim was being altered by serving them with a copy of the October 29th second amended plan.

Thus, considering all of the relevant evidence, the Court concludes that Heartland's failure to object to the treatment of its claim under the October 29th confirmed second amended plan should not bar its motion to vacate the Court's judgment confirming the second amended plan. Heartland was never served with notice of the change in the treatment of its claim, which, in and of itself, raises the possibility of a due process violation the Court need not fully address. Heartland's failure to object at confirmation is entirely reasonable based upon the facts of this case, and vacating the order confirming Hunt's second amended plan should prejudice Hunt little, if any. Further, Hunt's second amended plan has not been in effect long, and vacating the order to allow the second amended plan to be further amended to provide for the earlier payment of Heartland's claim will not prejudice any of Hunt's other creditors. Finally, any delay by Heartland in bringing this motion is entirely reasonable as Heartland clearly believed the changed treatment of its claim in the confirmed second amended plan was simply a clerical error that would be easily remedied by Hunt's counsel. The Court agrees that an expedient remedy by Hunt's counsel *should* have been the result. There does not appear to be any real reason why the confirmed second amended plan changed the date Heartland was to begin receiving payments, the integrity of the plan certainly does not require it when the plan is not even mathematically sound. In short, the Court can see no reason why Hunt's counsel refused to amend a confirmed plan rife with other errors entirely apart from the treatment of Heartland's claim.

For the foregoing reasons, this Court grants Heartland's motion to vacate the October 29, 2002, order confirming Hunt's Chapter 12 plan. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

See written Order.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS HEREBY ORDERED that the Motion to Vacate Order filed by HEARTLAND AG., INC., is hereby GRANTED.