In re Richard SHARIF, Debtor.

No. 09 B 05868.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 14, 2011.

871

Gina B. Krol, Cohen & Krol, Chicago, IL, for Wellness International Networks, Ltd.

Ean L. Kryska, SmithAmundsen LLC, Chicago, IL, for Horace Fox, Jr.

Garrett S. Reidy, Westchester, IL, for Soad Wattar Revocable Living Trust of 1992, Ragda Sharifeh.

William Stevens, William J. Stevens, Lakeside, MI, L. Judson Todhunter, Howard & Howard Attorneys PLLC, Chicago, IL, for Richard Sharif.

Bruce E. de'Medici, Belongia, Shapiro & Franklin, LLP, Chicago, IL, for Horace Fox, Jr., Bruce De'medici.

## ORDER ON MOTION TO VACATE JUDGMENT OR ALTERNATIVELY TO STAY ENFORCEMENT OF JUDGMENT (Dkt. No. 67)

JACQUELINE P. COX, Bankruptcy Judge.

Movant, Ragda Sharifeh, as successor trustee and successor beneficiary of the Soad Wattar Revocable Living Trust of 1992 asks that the court vacate (1) a portion of the July 6, 2010 judgment and (2) an August 5, 2010 order pursuant to Federal Rule of Bankruptcy Procedure 9024. Alternatively, she requests that pursuant to Federal Rule of Bankruptcy Procedure 8005, enforcement of the August 5, 2010 order be stayed pending final disposition of Adversary Proceeding 10–2239, which she filed against Richard Sharif, ("Debtor"), and his Bankruptcy Trustee, Horace Fox, Jr.

## I. Background

Prior to filing his chapter 7 petition, the Debtor, Richard Sharif, was involved in litigation in the Federal District Court for the Northern District of Texas. The Debtor and several other parties filed a complaint on July 8, 2005 against Wellness International Network, Ltd.; WIN Network, Inc.; Ralph Oats; Cathy Oats and Sheri Matthews (collectively "WIN") in the United States District Court for the Northern District of Texas asserting fraud, RICO and other claims, seeking damages of nearly $1 million. Amended Complaint Objecting to Discharge, Case No. 09 B 05868, Adversary Proceeding No. 09–00770, dkt. no. 10, at p. 2 (the "Am. Compl."). The Debtor and his co-plaintiffs did not initiate discovery in that action and did not cooperate with WIN's efforts to obtain discovery. *Id.* The Debtor and his co-plaintiffs had admissions deemed against them for their failure to respond to discovery requests. WIN moved for summary judgment on the ground that the admissions negated all claims asserted; the Debtor and his co-plaintiffs failed to introduce any evidence in support of the claims. *Id.* The district court granted summary judgment against the Debtor Richard Sharif and his co-plaintiffs on those grounds. *Id.* The Debtor and his co-plaintiffs appealed the entry of summary judgment to the Fifth Circuit in 2007. *Id.* The Fifth Circuit affirmed all of the district court's rulings and noted:

> A review of the record on appeal demonstrates that Appellants' untimely performance in this court mirrors a lengthy history in the district court of dilatoriness and hollow posturing interspersed with periods of nonperformance or insubstantial performance and compliance by Appellants and their counsel, leaving the unmistakable impression that they have no purpose other than to prolong this contumacious litigation for purposes of harassment or delay, or both. The time is long overdue to terminate Appellants' feckless litigation at the obvious cost of time and money to the Defendants by affirming all rulings of the district court but remanding the case to that court for the reinstatement of its consideration of Appellees' motion for attorney's fees. In so doing, we caution Appellants that any further efforts to prolong or continue proceedings in this court, including the filing of petitions for rehearing, will potentially expose them to the full panoply of penalties, sanctions, damages, and double costs pursuant to FRAP 38 at our disposal.

*Id.* at 2–3 (citing *Sharif v. Wellness Int'l Network, Ltd.*, 273 Fed.Appx. 316, 317, 2008 U.S.App. Lexis 7483, at \*2 (5th Cir. 2008)). On remand the district court awarded WIN attorneys' fees in the amount of $655,596.13 as a sanction against the Debtor and his co-plaintiffs. *See* Order on Mot. for Civil Contempt, Civil Action No. 3:05–CV–01367–B, dkt. no. 180 at p. 1, District Court for the Northern District of Texas, Dallas Division. The Debtor was served with post-judgment discovery and document requests. *Id.* The Debtor never complied with WIN's discovery requests. *Id.*

WIN filed a Motion to Compel post-judgment discovery on October 13, 2008; the motion was granted on November 19, 2008; the Texas district court ordered the Debtor to respond to outstanding discovery requests. *Id.* at 1–2. Despite the district court's order compelling the Debtor to comply with discovery requests, the Debtor did not respond to such requests nor did he appear for his deposition. *Id.*

On December 4, 2008, WIN filed a Motion for Civil Contempt against the Debtor for violating the Texas court's order on the Motion to Compel. *Id.* At a show cause

hearing on January 13, 2009, at which the Debtor did not appear, the Texas court found clear and convincing evidence that he had violated several court orders compelling him to comply with outstanding discovery requests and an order to appear at the January 13, 2009 show cause hearing. *Id.* at 3. On February 10, 2009 the Texas court held the Debtor in civil contempt for discovery violations. He was ordered to respond to post-judgment discovery and to reimburse WIN for attorneys' fees and costs incurred to prepare and file the motion to compel and the motion for civil contempt. *Id.* at 3–5. On February 24, 2009, two weeks after the Texas court's contempt ruling, the Debtor filed the instant bankruptcy case.

On August 24, 2009, Wellness International Network, Ltd., Ralph Oats and Cathy Oats ("the WIN Plaintiffs") filed adversary proceeding 09–00770 asking the court to deny Debtor a discharge pursuant to 11 U.S.C. § 727.

Count I of the amended adversary complaint, 09–00770, dkt. no. 10, alleges in part that the Debtor has "continuously concealed property that he admitted under penalty of perjury that he owned by claiming that such property is currently owned by the Soad Wattar Living Trust" in violation of 11 U.S.C. § 727(a)(2)(A). Am. Compl. ¶ 20. The WIN Plaintiffs also allege that the Debtor was the Trustee of the Soad Wattar Trust, exercised complete control over the trust, and held out the assets of the trust as his own. Am. Compl., ¶ 21.

Count II alleges in part that "the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information" in violation of 11 U.S.C. § 727(a)(3). *Id.* at ¶¶ 24–25.

Count III alleges in part that he "knowingly and fraudulently, in or in connection with the case made a false oath or account" in violation of 11 U.S.C. § 727(a)(4)(A). Am. Compl., ¶¶ 27–28. Specifically, the WIN Plaintiffs assert that the Debtor failed to disclose companies in which he was an officer within the past 6 years where the bankruptcy petition requires the Debtor to disclose all businesses in which he was an officer, director, partner or managing executive of a corporation during the past 6 years. The Debtor did not disclose any businesses in response to this query. *See* Statement of Financial Affairs ("SOFA"), Voluntary Chapter 7 Bankruptcy Petition (the "Petition"), Case No. 09 B 05868, dkt. no. 1 at p. 29, ¶ 18.

Count IV alleges that the Debtor failed to explain the loss of $5 million in assets that he claimed to own in a 2002 Washington Mutual Bank, N.A. Loan Application (the "Loan Application") in violation of 11 U.S.C. § 727(a)(5). Am. Compl., ¶ 32. The assets listed in the Loan Application included the following: (1) Logan Square MRI Center; (2) Sharif Pharmacy; (3) Hermosa Medical Center; (4) three Banco Popular Accounts containing $90,000, $40,000 and $50,000, respectively; (5) $1,400,000 in a 401(k) retirement fund; and (6) $1,400,000 in real estate (collectively, the "Loan Application assets"). *See* Loan Application, Adversary Proceeding 09–00770, dkt. no. 17–1. The Debtor later claimed at his 2004 examination that he did not own any of the property that he claimed to own in the Loan Application. May 13, 2010 Transcript of Debtor's 2004 Examination, Adversary Proceeding 09–00770, Ex. 59 at 60–61. He has failed to explain the loss or disposition of the $5 million of assets in issue.

Count V seeks a declaratory judgment that the Soad Wattar Trust is the *alter ego* of the Debtor because the Debtor exercises complete control over the trust, resulting in the unity of interest between the Debtor and the trust such that separate

personalities do not exist. Count V also alleges that to the extent that the Loan Application assets have been transferred into the trust, the trust is organized and operated as a mere tool or business conduit of the Debtor. Am. Compl., ¶ 35.

On April 15, 2010, the WIN Plaintiffs filed a Motion for Sanctions, Costs and Fees, and in the alternative, a Motion to Compel, Motion for Costs and Fees, and Motion to Modify Scheduling Order (hereinafter the "Sanctions Motion"), Adversary Proceeding 09–00770, dkt. no. 39. The court held a hearing on the Sanctions Motion on April 21, 2010. The WIN Plaintiffs argued that the Debtor had failed to comply with discovery requests and missed discovery deadlines for document production and responding to interrogatories. On April 21, 2010 an order was entered compelling the Debtor to comply with all outstanding discovery by April 28, 2010 or risk an order of default being entered against him. The hearing on the Sanctions Motion was continued to April 28, 2010.

On April 28, 2010, the WIN Plaintiffs reported that the Debtor had produced some documents along with certain interrogatory responses on the afternoon of April 27, 2010. The hearing was continued to May 24, 2010 to allow the WIN Plaintiffs time to assess whether the Debtor's document production and interrogatory responses were in compliance with the April 21, 2010 order compelling the Debtor to comply with all outstanding discovery requests. At the hearing on May 24, 2010, the WIN Plaintiffs complained that the Debtor had not fully complied with discovery requests and should be sanctioned. *See* May 24, 2010 Transcript of Sanctions Hearing, *Wellness International, Ralph Oats and Kathy Oats v. Richard Sharif, Individually and as Trustee of the Soad Wattar Trust,* Adversary Proceeding 09–00770, dkt. no. 99 at 4 ("May 24, 2010 Hearing Transcript").

## II. Debtor Failed to Sign or Verify His Interrogatory Responses

 Federal Rule of Civil Procedure 33(b), applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7033, requires in relevant part that:

(1) . . . [I]nterrogatories must be answered:

(A) by the party to whom they are directed; or

(B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.

(3) . . . Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

(5) . . . The person who makes the answers must sign them, and the attorney who objects must sign any objections.

Fed.R.Civ.P. 33(b)(1), (3) and (5). The Seventh Circuit Court of Appeals and the United States District Court for the Northern District of Illinois have determined that under Rule 33, answers to interrogatories must be verified and signed by the person answering the interrogatory, not only by the party's attorney. *See, e.g., Hindmon v. Natl.-Ben Franklin Life Ins. Corp.,* 677 F.2d 617, 619 (7th Cir.1982) (observing that interrogatory answers signed by an attorney and not the party violated "the clear mandate of Federal Rule of Civil Procedure 33(a)"); *accord Overton v. City of Harvey,* 29 F.Supp.2d 894, 901 (N.D.Ill.1998) (striking as summary judgment exhibit plaintiffs unverified answers to interrogatories signed only by attorney).

The Debtor's interrogatory responses as Trustee of the Soad Wattar Trust were signed by the Debtor, however, they were not made under oath. *See* May 24, 2010 Hearing Transcript at 6; Richard Sharif's Answers to Interrogatories as Trustee of the Soad Wattar Revocable Living Trust, Hearing Ex. No. 3 at p. 9 ("Sharif Trustee Interrog. Answers"). Similarly, the Debtor's individual interrogatory responses, which were signed by Debtor's attorney, were not answered under oath. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, May 24, 2010 Hearing Transcript, Ex. No. 4 at 9 ("Sharif Individual Interrog. Answers"); May 24, 2010 Hearing Transcript at 6. Those responses should have been signed under oath by the Debtor as required by Fed. R.Civ.P. 33(b).

The Debtor was not present at the hearing; his attorney did not explain why the interrogatory responses were not signed under oath as required.

### III. Debtor's Failure to Provide Documents Requested by the WIN Plaintiffs and the Bankruptcy Trustee

The WIN Plaintiffs asserted that the Debtor repeatedly failed to produce numerous documents requested by them in requests for production and by the Trustee at the section 341 creditors meeting ("creditors meeting"), despite this court's April 21, 2010 order compelling the Debtor to comply with all outstanding discovery requests.

#### a. Washington Mutual Loan Application and Related Documents

During the Debtor's initial creditors meeting ("creditors meeting") on March 25, 2009, the WIN Plaintiffs and the Bankruptcy Trustee requested that the Debtor provide documents relating to the Loan Application assets that he claimed were his. The creditors meeting was continued to April 21, 2009 to allow the Debtor additional time to gather documents related to the Loan Application assets. *See* Sanctions Motion at p. 5, 09 B 05868, Adversary Proceeding 09–00770, dkt. no. 38, p. 7 ("Sanctions Motion"). When the Debtor appeared at the continued creditors meeting he did not provide the Bankruptcy Trustee or the WIN Plaintiffs with the requested documents; he asserted that none of the Loan Application assets belonged to him. *Id.* The Debtor asserted that the Soad Wattar Trust owned all of the Loan Application assets, that he was the Trustee of the trust, and that he lied when he represented that he owned those assets. *Id.*

Pursuant to Federal Rule of Bankruptcy Procedure 2004, on motion of any party in interest, the court may order the examination of any entity. At a Rule 2004 examination ("2004 examination") of the Debtor, he confirmed under oath that he testified at the creditors meeting that he lied in the Loan Application:

Q: The third sentence [of Debtor's answer to the Amended Adversary Complaint states], defendant testified at the 341 meeting that he lied on the loan application, that he did not own any of the real estate listed in the loan application, and that this property is owned by Soad Wattar Trust, his mother or sister. Do you see that statement? I'd be glad to orient you if you—

A: Yeah. Is that by the Answer, defendant admits?

Q: Uh huh.

A: Yeah. That on April '09—okay.

Q: Is that a true statement?

A: Yes, yeah.

May 13, 2010 Rule 2004 Examination of Richard Sharif, *Wellness International,*

*Ralph Oats, and Cathy Oats v. Richard Sharif, Individually and as Trustee of the Soad Wattar Trust,* Adversary Proceeding 09–00770, Ex. No. 59 at 60–61 ("Transcript of Debtor's 2004 Examination"). *See* also Defendant's Answer to Amended Complaint, dkt. no. 23, p. 8, 09 B 05868, Adversary Proceeding 09–00770.

Based upon the Debtor's assertion that the Soad Wattar Trust owned the assets listed in the Loan Application, the WIN Plaintiffs and the Bankruptcy Trustee requested documents relating to the formation and funding of the trust and documents evidencing ownership or transfer of the Loan Application assets. *See* Sanctions Motion at p. 7. The creditors meeting was continued to June 3, 2009 to give the Debtor time to provide the requested documents. At the June 3, 2009 creditors meeting the Debtor failed to provide any of the requested documents. Sanctions Motion at p. 7.

Subsequent to the Debtor's refusal to provide the documents at his second and third creditors meetings, the Debtor brought a Motion for Protective Order requesting that he be granted leave to tender documents relating to the Loan Application and the Soad Wattar Trust under a protective order to prevent disclosure of information to the Debtor's creditors and their attorneys. *See* 09 B 05868, dkt. no. 23. The Debtor's Motion for Protective Order was denied on June 11, 2009. *See* 09 B 05868, dkt. no. 25. Despite this court's denial of Debtor's Motion for Protective Order, he never tendered any documents relating to the Loan Application assets, prompting the Bankruptcy Trustee to file a Motion for Turnover of Documents from Richard Sharif to Horace Fox, Jr. on October 20, 2009. *See* 09 B 05868, dkt. no. 40. The court granted that motion on October 27, 2009 (09 B 05868, dkt. no. 42). To date the Debtor has failed to comply with this court's order to turn over the required documents to Horace Fox, Jr., the Trustee of his bankruptcy estate. *See* Sanctions Motion at p. 6.

The WIN Plaintiffs filed a document request seeking the Loan Application assets. *See* Richard Sharif's Response to Plaintiffs' First Request for Production of Documents, Hearing Ex. No. 1, ¶¶ 15–22 ("Sharif Production Responses"). The Debtor has failed to produce documents relating to the Loan Application assets.

### b. Richard Sharif Revocable Trust Documents

The WIN Plaintiffs asserted that the Debtor failed to disclose information and documents relating to the Richard Sharif Revocable Trust despite interrogatory and production requests requiring him to do so.

The Debtor listed the Richard Sharif Revocable Trust in his Petition as property owned by another person that he controls. *See* Statement of Financial Affairs, ("SOFA") 09 B 05868, dkt. no. 1, p. 27. Based on this disclosure, the WIN Plaintiffs' interrogatories requested that the Debtor identify each trust for the benefit of others that the Debtor created or contributed to in the last five years. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, May 24, 2010 Hearing Ex. 4, pp. 8–9, ¶ 11; Richard Sharif's Response as Trustee to Plaintiffs' First Request for Production of Documents, May 24, 2010 Hearing Transcript, Ex. No. 2 at p. 2, ¶ 11 ("Sharif Trustee Production Responses"). The Debtor responded to the interrogatory with the answer "none," which is wholly inconsistent with the Debtor's SOFA disclosure of the Richard Sharif Revocable Trust on page 27 and his admission that he was the Trustee of the Soad Wattar Revocable Living Trust of 1992. *See* Sharif Individual Inter-

rog. Answers at p. 8, ¶ 11; May 24, 2010 Hearing Transcript at 9; SOFA, ¶ 14.

The WIN Plaintiffs also requested that the Debtor produce all documents referencing or evidencing any assets held in trust in which the Debtor claims or has an interest. Sharif Production Responses at ¶ 42 and Sharif Trustee Production Responses at ¶ 42. Again, despite Debtor's acknowledgment of having an interest in the Richard Sharif Revocable Trust in his sworn bankruptcy schedules (*See* SOFA at p. 27), the Debtor failed to produce any documents relating to the trust. May 24, 2010 Hearing Transcript at 9–11.

### c. Bank Statements and Financial Records

The WIN Plaintiffs asserted that the Debtor failed to produce bank statements and account records relating to financial transactions involving Richard Sharif individually and the Soad Wattar Trust. The Plaintiffs requested that the Debtor produce documents evidencing any account at a financial institution in which the Debtor is a designated signatory. Sharif Trustee Production Responses at p. 7, ¶ 44; Sharif Production Responses at p. 7–8, ¶ 44. The Debtor failed to produce any documents responsive to these requests and instead listed the names and addresses of three financial institutions with corresponding account numbers. *See* Sharif Production Responses at p. 7, ¶ 44; Sharif Trustee Production Responses at p. 7, ¶ 44; May 24, 2010 Hearing Transcript at 11.

The WIN Plaintiffs also requested that the Debtor produce documents relating to any checking, savings, money market, passbook, demand deposit, negotiable order of withdrawal or trust account in which the Debtor had any interest. Sharif Trustee Production Responses at p. 8, ¶ 49; Sharif Production Responses at p. 8, ¶ 49. The Debtor failed to produce any documents responsive to this request, even

though he had a personal account with JP Morgan Chase Bank. He acknowledged his lack of compliance during his 2004 examination. Transcript of Debtor's 2004 Examination at 166. May 24, 2010 Hearing Transcript at 11–12.

During their investigation, the WIN Plaintiffs independently discovered numerous documents that the Debtor failed to produce relating to assets held at A.G. Edwards in which the Debtor had an interest. The WIN Plaintiffs discovered account statements from A.G. Edwards for September and October of 2003 in the name of Soad Wattar, the Debtor's mother, and Richard Sharif as joint tenants. A.G. Edwards & Sons, Inc. Account Statements, Ex. No. 61 to 2004 Examination of Debtor ("A.G. Edwards Statements"). These statements revealed that approximately $752,050 in assets were held in joint tenancy by Soad Wattar and Richard Sharif. *See* A.G. Edwards Statements. In his Rule 2004 examination the Debtor admitted that while he had documents relating to this A.G. Edwards account, he did not produce them. Transcript of Debtor's 2004 Examination at 172–173. The Debtor also stated that the assets in this A.G. Edwards account were transferred to Wachovia Bank, but the Debtor failed to produce any transfer documents. Transcript of Debtor's 2004 Examination at 174–176. The Debtor also failed to disclose the A.G. Edwards accounts in his bankruptcy petition. *See* Petition, dkt. no. 1, pp. 9–13, Schedule C of Personal Property and Schedule D of Property Claimed as Exempt.

The WIN Plaintiffs discovered a TransAmerica Triple Advantage VA variable annuity held at A.G. Edwards for the benefit of the Debtor and his sister, Ragda Sharifeh, as joint tenants, with a valuation of $39,248. May 24, 2010 Hearing Transcript at 22–23. Once again, the Debtor failed to

provide information relating to this annuity despite receiving interrogatories and document requests requiring him to do so. May 24, 2010 Hearing Transcript at 22. At his 2004 examination the Debtor was unable to say where that money went. Transcript of Debtor's 2004 Examination at 178–179.

The WIN Plaintiffs estimate that approximately $912,000 in assets were held at A.G. Edwards for the benefit of the Debtor individually or jointly with his mother or his sister, yet the Debtor provided no information or documentation regarding the A.G. Edwards accounts. May 24, 2010 Hearing Transcript at 24.

The Debtor also failed to provide information or documentation evidencing other accounts that he admitted to having an interest in at his 2004 examination. May 24, 2010 Hearing Transcript at 26–31. The Debtor admitted the existence of a Soad Wattar Trust account at Banco Popular. During his 2004 examination, he admitted his failure to produce documents about various accounts:

1) Q: Sir, I'm just asking. You have not given me one single account statement for the trust [at Banco Popular], have you?

A: Account statement?

Q: Yes.

A: You mean, from like the investment firm?

Q: Yes.

A: There are boxes available. These are, you know—

Q: You have not provided us a single account statement, have you?

A: I did not. Again, I did not know that you needed that one. If not, it's available. You have that.

2) Q: Where are there accounts besides Banco Popular?

A: Banco Popular, absolutely, and whatever you need from Wells Fargo, I'll provide you with it.

Q: I'm just asking for the names of the companies—Wells Fargo and who else?

A: Wells Fargo, Wachovia, which is now Wells Fargo, has a mortgage payment for the house because it comes out of the mother's living trust every month. This is two—three. What else?

Q: Any investment firms like Smith Barney or Morgan Stanley? I'm just throwing out people that I can think of.

A: There is one she [Debtor's mother] has an account with Raymond James, since 2005, one account. I just remembered this. I believe that's all I know right now.

Transcript of Debtor's 2004 Examination at 107–109.

3) Q: I'm not asking how much you use it. I'm asking why have you not produced to me the JP Morgan Chase account statements as requested in discovery?

A: Counsel, I did list the only account that I have. I'm sorry if I didn't produce the statement available. I know there's a question, Counselor, that I need to reproduce because my lawyer would have told me to produce it. I went by the name of the bank and my account but—

Transcript of Debtor's 2004 Examination at 143–144.

### d. Conveyance, Disposal, or Transfer of Asset Documents

The WIN Plaintiffs asserted that the Debtor failed to provide information relating to the conveyance, disposal, or transfer of certain assets in which the Debtor once claimed an interest. At his 2004 examina-

tion the Debtor admitted that he once owned a 10% interest in the Logan Square MRI & Diagnostic Center, Inc. ("Logan Square") and that he had relinquished it. *See* Transcript of Debtor's 2004 Examination at 96. However, the Debtor never provided information or documentation evidencing the disposition of his interest in Logan Square; he admitted this at the 2004 examination despite having received the WIN Plaintiffs' interrogatories and requests for production inquiring about the disposition of his interest in Logan Square. *See* Transcript of Debtor's 2004 Examination at 96.

At that 2004 examination the Debtor denied ever having an ownership interest in Sharif Pharmacy (Transcript of Debtor's 2004 Examination at 61). However, the Debtor represented in a 2002 Internal Revenue Service income tax return that he was the 100% owner of Sharif Pharmacy. *See* Transcript of Debtor's 2004 Examination at 68. After the Debtor was confronted with the inconsistency between his testimony and his 2002 income tax return, he testified that he does not examine his tax returns because his accountant does and that he does not understand them. *Id.* at 69. The Debtor testified that he held a 10% ownership interest in Sharif Pharmacy and that the 100% figure listed on his tax return was an error. *Id.* at 68. Whether the Debtor's ownership interest in Sharif Pharmacy was 10%, 100%, or zero as testified to on page 61 of his 2004 examination, he admitted at his 2004 examination that he produced no documentation evidencing the transfer of stock in Sharif Pharmacy, acknowledging his failure to comply with his obligation to disclose information about his financial affairs. *See* Transcript of Debtor's 2004 Examination at 72. The Debtor also admitted that he asked the office manager of Sharif Pharmacy for responsive documents from 1992 through the present but

did not undertake other efforts to obtain those documents. *Id.* at 86–87.

### e. Corporate Records

The WIN Plaintiffs asserted that the Debtor failed to produce corporate records for Sharif Pharmacy and Hermosa Medical Center after 2006. The WIN Plaintiffs' discovery requests specifically designated corporate records for Sharif Pharmacy and Hermosa Medical Center as documents for production. The Debtor never produced the requested documents even after this court's April 21, 2010 order compelling the Debtor's compliance with all outstanding discovery requests. May 24, 2010 Hearing Transcript at 34–37.

### f. Documents Evidencing the Formation and Funding of the Soad Wattar Trust

The WIN Plaintiffs asserted that the Debtor failed to produce documents relating to the formation and funding of the Soad Wattar Trust. May 24, 2010 Hearing Transcript at 38. The WIN Plaintiffs argued that these documents are critical because the Debtor testified that the assets he once claimed as his own were actually assets of the trust.

The requests for production required the Debtor to produce documents establishing and funding the Soad Wattar Trust, evidencing the transfers of assets into the trust, and all other documents related to assets held in the trust. *See* Sharif Trustee Production Responses, Hearing Ex. No. 2 at ¶¶ 27, 45–46, 49–50; May 24, 2010 Hearing Transcript at 38–41. The WIN Plaintiffs specifically requested all deeds, records, titles, or other documents that related to assets in the name of the Soad Wattar Trust from 2002 to the present. Debtor alleges that the Trust was funded with a $2,000,000 inheritance from his deceased father that came from an international wire transfer from Beirut, Lebanon

through a financial entity in Dubai. Transcript of Debtor's 2004 Examination at 109. However, the Debtor also admitted that he did not have any of the documents evidencing the wire transfers in his possession and that he had not produced such documents to the WIN Plaintiffs. Transcript of Debtor's 2004 Examination at 109–111. The Debtor also admitted that except for one asset, the Revere house, he failed to produce any documents showing transfers of assets into the Soad Wattar Trust from 1992 to the present. *See id.* at 104–105. The Debtor has failed to produce documentation relating to the formation and funding of the Soad Wattar Trust.

The WIN Plaintiffs also requested the 1992 trust instrument that established the Soad Wattar Trust. The Debtor admitted at his 2004 examination that he failed to produce the original trust instrument. Transcript of Debtor's 2004 Examination at 101.

A review of the Debtor's Statement of Financial Affairs reveals that he did not disclose that he was the Trustee of the Soad Wattar Trust. *See* SOFA, at ¶ 14, where only the Richard Sharif Revocable Trust was disclosed.

### g. Signed Tax Returns and Documents Used to Prepare Debtor's Tax Returns

The WIN Plaintiffs asserted that the Debtor failed to produce signed tax returns or any of the underlying source documents used to prepare such tax returns. May 24, 2010 Hearing Transcript at 44. While the WIN Plaintiffs did receive some federal and state tax returns from 2003–2008 from the Debtor, none of the returns received was signed. *See* May 24, 2010 Hearing Transcript at 44; Sharif Production Responses at ¶ 10 and Sharif Trustee Production Responses at ¶ 10. When the Debtor was questioned about the unsigned tax returns at his 2004 examination, he stated that he was 100% sure that the tax returns that went to the government were signed, but he did not produce any signed tax returns to the WIN Plaintiffs. *See* Transcript of Debtor's 2004 Examination at 130–131. The Debtor also stated that he did not attempt to obtain signed tax returns from the IRS. *Id.* at 130.

The Debtor also failed to produce the source documents used to prepare his tax returns and admitted the same at his 2004 examination. *See id.* at 135.

### h. Documents Evidencing Debts Owed to Debtor's Family Members

The WIN Plaintiffs asserted that the Debtor failed to produce any documents underlying the debts that he owes to his family members. *See* Sharif Production Responses & Sharif Trustee Production Responses at ¶¶ 34–37; May 24, 2010 Hearing Transcript at 54. The Debtor's bankruptcy petition disclosed several debts owed to family members including the following: (1) $49,000 to Haifa Kaj, Debtor's sister; (2) $39,000 to Jamal Sharif, Debtor's brother; (3) $93,000 to Ragda Sharifeh, Debtor's sister; and (4) $90,000 to Soad Wattar, Debtor's mother. *See* Petition at dkt. no. 1, Schedule F, p. 17; May 24, 2010 Hearing Transcript at 55. Based on these disclosures in the Debtor's Schedule F, the WIN Plaintiffs requested that the Debtor produce documents referencing or evidencing debts owed to the above family members. *See* Sharif Production Responses, May 24, 2010 Hearing Ex. No. 1 at ¶¶ 34–37; Sharif Trustee Production Responses, Hearing Ex. No. 2 at ¶¶ 34–37. The Debtor failed to produce any documents evidencing the debts he owes to his relatives and asserted that those debts were based on oral agreements. May 24, 2010 Hearing Transcript at 56. The WIN Plaintiffs contend, and the court agrees, that it is hard to believe that $271,000 was transferred as loans to the Debtor without

documents such as wire transfer forms, bank statements, canceled checks, emails or enclosure letters being created.

### IV. Debtor's Response

In response to the WIN Plaintiffs' assertions regarding the Debtor's noncompliance, the Debtor's attorney argued that while there may be some deficiencies in the Debtor's discovery responses, the Debtor made a good faith effort to comply with all discovery requests. May 24, 2010 Hearing Transcript at 75–76. Debtor's attorney pointed out that the Debtor was initially unable to meet the discovery deadlines because he was in Syria attending to his ill mother who subsequently passed away. May 24, 2010 Hearing Transcript at 68. When the court requested proof of the Debtor's whereabouts the Debtor's attorney produced airline tickets to Syria and a copy of the mother's death certificate. *Id.* This court does not believe, however, that the Debtor made a serious effort to comply with the WIN Plaintiffs' discovery requests before or after his mother's death.

The Debtor's attorney argued that the WIN Plaintiffs' counsel never called him to object to the sufficiency of the discovery responses before filing the Sanctions Motion. May 24, 2010 Hearing Transcript at 68–69. According to him, the WIN Plaintiff's supplement to their Sanctions Motion did not contain the statement required by Northern District of Illinois Local Rule 37.2 certifying that the movant consulted with opposing counsel regarding the discovery defects before filing a motion for discovery and production of documents. May 24, 2010 Hearing Transcript at 77–78. This court notes that a phone call would have been futile because the Debtor was so grossly out of compliance with his discovery obligations. The court notes that the attorney for the WIN Plaintiffs may have complied with Local Rule 37.2 as their Sanctions Motion includes a certification

that he conferred with the Debtor's attorney about the relief sought in the Sanctions Motion before it was filed. Sanctions Motion at p. 14. The Debtor's counsel's complaint in this regard lacks specificity regarding which pleading lacks the required certification/statement of conference/consultation. *See* Local Rule 7037–1 of the Local Rules of the Bankruptcy Court for the Northern District of Illinois which has a similar requirement.

The Debtor's attorney asserted that he produced additional documents after the Debtor's 2004 examination when he surmised, based on the questions that were posed to the Debtor, that the WIN Plaintiffs wanted more documents. The Debtor's attorney took it upon himself to produce bank statements from several financial institutions relating to the Soad Wattar Trust, the Debtor's personal bank accounts and the Sharif Pharmacy. May 24, 2010 Hearing Transcript at 70–71. He did not state which documents were produced after the 2004 examination. The court has no idea what was contained in the late production, or whether those documents were responsive to the WIN Plaintiffs' requests and why they were not produced sooner. The court notes that the Debtor's 2004 examination took place on May 13, 2010; any documents produced by Debtor's attorney after that date were well outside of the April 28, 2010 deadline that the court set for the Debtor to comply with all outstanding discovery requests, preventing the WIN Plaintiffs from questioning the Debtor about those documents at his 2004 examination.

### V. Ragda Sharifeh's Involvement With the Bankruptcy Case and The Adversary Proceeding Before the Entry of The July 6, 2010 Order

Ragda Sharifeh testified at a deposition herein on June 10, 2010 that her brother,

Richard Sharif, the Debtor, acted as her agent in the litigation in the Northern District of Texas. Transcript of June 10, 2010 Deposition of Ragda Sharifeh ("Ragda Sharifeh Deposition"), 09 B 05868, dkt. no. 78, Exhibit A, pp. 47–48. She directed the Debtor to file the litigation, instructed him on how to proceed with the litigation, and instructed him to represent to third parties that he owned the Loan Application assets.

At page 95 of the Deposition, Ragda Sharifeh testified about telling the Debtor to use property to buy a house for their mom:

> Q: And again, it's checked self-employed. Were you aware that Richard represented to Washington Mutual Bank that he, as self-employed, owned Logan Square MRI Center, Sharif Pharmacy, and Hermosa Medical Center?
>
> A: What I told him is to use the home address, the clinic address, in order to secure the amount of money to be used to buy the house for mom.

At page 96 of the Deposition, Ragda Sharifeh testified that the assets were being held out by the Debtor as his own although he was not the owner of them:

> Q: So did you know that these assets, the company's and the real estate, were being held out by Richard as representing that he owned all of them? He was representing to the bank that he owned the real estate and the business?
>
> A: He is, he is not the owner. Otherwise his ex-wife would have cleaned him out, but I told him that he could make that statement.

Ragda Sharifeh was scheduled as a creditor herein on the Debtor's Schedule F as an unsecured nonpriority creditor. 09 B 05868, dkt. no. 1, Schedule F, p. 17. According to a Certificate of Service dated February 28, 2009, she was sent notice of the filing of this bankruptcy case. 09 B 05868, dkt. no. 9, p. 3.

## VI. Ragda Sharifeh as a Successor Beneficiary

■ Ragda Sharifeh purports to act herein as a successor beneficiary to the Soad Wattar Revocable Living Trust of 1992. Her unsupported allegation will be given no weight by this court as she has presented neither testimony nor documents in support of this assertion. In any event, a trust beneficiary cannot sue or be sued regarding the trust.

■ Under the Illinois Trusts and Trustees Act, trustees, not beneficiaries, are vested with the power to pursue "claims in favor or against the trust estate." The trustee has the power to "compromise, contest, prosecute or abandon claims or other charges in favor of or against the trust estate." *In re Schneider,* 417 B.R. 907, 913 (Bankr.N.D.Ill.2009); 760 ILCS 5/4.11. The trustee, not the beneficiaries, has the exclusive authority to sue third parties who injure the beneficiaries' interest in the trust. *Godfrey v. Kamin,* 2000 WL 1847768, *3–4, 2000 U.S. Dist. LEXIS 18213, *13–14 (N.D.Ill.Dec. 13, 2000).

## VII. Ragda Sharifeh May Not Be a Successor Trustee

■ Ragda Sharifeh has failed to present any factual basis that she is the successor trustee of the Soad Wattar Trust and the allegations set forth in her Motion to Intervene further reveal to this court that her assertion lacks any legal basis. Paragraph 14 of her Motion to Intervene alleges that shortly after a temporary restraining order was entered by a state court judge on July 21, 2010 in a Chancery Division lawsuit that she filed on July 15, 2010, Richard Sharif resigned as the Trus-

tee of the Soad Wattar Trust.[1] As of July 6, 2010, however, the trust no longer existed. The trust's assets became property of the Debtor's estate as of the commencement of the bankruptcy case once the July 6, 2010 order was entered declaring the trust to be the Debtor's *alter ego.* In *In re Sklarin,* 69 B.R. 949, 954 (Bankr. S.D.Fla.1987), the court ruled that "[it] is well established that property of the Debtor in the possession, custody and control of its alter ego comprises property of the estate at the commencement of the case, and that bankruptcy courts have the power to disregard separate corporate entities so as to reach the assets of its non-debtor alter ego to satisfy debts of the Debtor." (quoting *In re F & C Services, Inc.,* 44 B.R. 863, 868 (Bankr.S.D.Fla.1984)).

## VIII. Grounds on Which a Stay May Be Granted

 The movant requests a stay of the August 5, 2010 order pending resolution of Adversary Proceeding 10–2239 pursuant to Federal Rule of Bankruptcy Procedure 8005, which applies to stays pending appeal. Ragda Sharifeh is not asking that a matter be stayed pending an appeal; she seeks a stay pending the resolution of a separate adversary proceeding. However, the court will apply that rule's standards to her request. The court must consider the following factors in determining whether to grant a stay pending appeal: "(1) the movant's likelihood of success on the merits of the appeal; (2) whether the movant will suffer irreparable injury if a stay pending the appeal is not granted; (3) whether other parties will suffer substantial harm if the stay is issued; (4) whether there will be harm to the public interest if the stay is issued." *In re Maurice,* 167 B.R. 136, 138 (Bankr.N.D.Ill.1994).

### a. Ragda Sharifeh Has Not Shown a Likelihood of Success on the Merits

To secure a stay pending the resolution of Adversary Proceeding 10–2239, Ragda Sharifeh must show that she is likely to succeed in Adversary Proceeding 10–2239. She has not provided the court with any legal or factual grounds on which it can find that she is likely to succeed in pursuing the claims in Adversary Proceeding 10–2239. Further, the movant has failed to show that she is the appropriate party to seek relief on behalf of the Soad Wattar Trust.

### b. Ragda Sharifeh Has Not Shown that She will Suffer Irreparable Harm if the Court Denies Her Request to Stay Proceedings

The movant has not provided any evidence establishing that she will suffer irreparable harm absent a stay. Her unsupported allegations as to the likelihood of success and irreparable harm carry no weight. *See Rowell v. Voortman Cookies, Ltd.,* 2003 WL 22317373 *4 (N.D.Ill. Oct.8, 2003)

---

1. Ragda Sharifeh and Haifa Kaj sued Richard Sharif in state court after this court found that the Soad Wattar Trust was his *alter ego.* They sought, amongst other things, a declaration that Ragda Sharifeh was the successor beneficiary of the Soad Wattar Trust, and an injunction requiring Richard Sharif to transfer all Soad Wattar Trust assets to Ragda Sharifeh and enjoining him from transferring assets in the Soad Wattar Trust to any of his creditors who filed claims against him in his bankruptcy case. *See Ragda Sharifeh and Haifa Kaj v. Richard Sharif,* 10 CH 30432, filed on July 15, 2010 in the Circuit Court of Cook County, Illinois. However, the temporary restraining order entered in state court may have restrained nothing, as the trust assets became part of the bankruptcy estate as of the date of bankruptcy filing. *See infra In re Sklarin,* 69 B.R. 949, 954 (Bankr.S.D.Fla. 1987).

### c. Granting Relief Would Harm Other Interested Parties

A stay of the August 5, 2010 order would substantially harm the WIN Plaintiffs as they have been trying to enforce the $655,596.13 judgment of the District Court of the Northern District of Texas for many years in the face of appeals, this bankruptcy filing and the Debtor's refusal to disclose information. Ragda Sharifeh could have litigated her concerns in this bankruptcy case before it was adjudicated while she was involved as a creditor and as a witness. Delaying the bankruptcy estate's progress at this time would be unfair.

### d. The Public Interest Will Be Harmed in Granting Ragda Sharifeh's Request for Relief

Staying the enforcement of the August 5, 2010 order would not be in the public interest. The public interest lies in maintaining a transparent, efficient bankruptcy system. Delaying the disposition of the assets that Bankruptcy Trustee Horace Fox, Jr. has on hand while a nonparty to the underlying matter pursues a separate lawsuit, is not in the public's interest.

### IX. Grounds on Which an Order or Judgment May be Vacated

Federal Rule of Bankruptcy Procedure 9024 ("Fed. R. Bank. P.") provides that Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 60 applies in cases under the Bankruptcy Code. Fed.R.Civ.P. 60(b), which allows relief from judgments and orders, provides for relief based upon:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud ... misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgement has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Ragda Sharifeh, the movant herein, seeks relief from the part of the July 6, 2010 order that provides that the Soad Wattar Trust is the Debtor's *alter ego*. She asserts that the WIN Plaintiffs as creditors did not have standing to pursue an *alter ego* claim against Richard Sharif. However, Federal Rule of Civil Procedure 60(b) does not provide relief based on allegations of legal error. *In re Hunt*, 293 B.R. 191, 194–195 (Bankr. C.D.Ill.2003). The Seventh Circuit has held that "Rule 60 is not a vehicle for correcting putative legal errors in an underlying judgment. The ground for setting aside a judgment under Rule 60(b) must be something that could not have been used to obtain a reversal by means of a direct appeal." *Curry v. Bethany Hospital*, No. 08–2282, 2009 WL 3731877, at *89 (7th Cir. Nov. 09, 2009).

The movant has not shown that the orders at issue were entered as a result of inadvertence, oversight, mistake, surprise, newly discovered evidence, fraud or other available grounds. Allegations of legal error must be pursued on appeal.

### X. Request that the Court Return to the Soad Wattar Trust Funds in Excess of the Amount Owed to Richard Sharif's Creditors

This request will be Denied, as pursuant to 11 U.S.C. § 726(a)(6), any funds remaining in the bankruptcy estate in excess of payments on creditors' claims and administrative expenses are, by law, to be returned to the debtor. *See In re*

*Stephenson,* 415 B.R. 436, 440 (Bankr.D.Idaho.Feb.2009).

### XI. Request That Funds in Excess of Amounts Owed to Richard Sharif's Creditors be Returned to Ragda Sharifeh

As noted in the preceding section, funds remaining in the bankruptcy estate in excess of amounts paid on claims and administrative expenses are to be returned, by law, to the debtor, not to any one creditor. 11 U.S.C. § 726(a)(6).

### XII. Effect of the Pending Appeals

 The Debtor has filed two Notices of Appeal herein. *See* 09 B 05868, dkt. no. 56, filed on July 13, 2010 and 09 A 00770, dkt. no. 86 filed on August 13, 2010. These appeals are pending in the United States District Court for the Northern District of Illinois. While those appeals are pending, this court has no jurisdiction to act on the order(s) being appealed: the July 6, 2010 order finding that the Soad Wattar Trust was the Debtor's *alter ego,* and the August 5, 2010 order requiring that funds be tendered to the bankruptcy trustee. As noted by Collier on Bankruptcy:

> The filing of a timely notice of appeal has the effect of immediately transferring jurisdiction from the bankruptcy court to the district court or bankruptcy appellate panel with respect to any matters involved in the appeal. This rule is the same as that which governs appeals taken from the district court to the court of appeals. The bankruptcy court is divested of authority to proceed further with respect to such matters, except in aid of the appeal, or to correct clerical mistakes under Federal Rule of Civil Procedure 60(a), adopted by Bankruptcy Rule 9024. Thus, after a notice of appeal is timely filed, the bankruptcy court

has no power to grant an appellant's motion to dismiss the action without prejudice, or to allow the filing of supplemental pleadings or otherwise to re-examine the order from which the appeal is pending, or to vacate its decision.

10 Collier on Bankruptcy ¶ 8001.04 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. Rev.).

### CONCLUSION

The movant's request seeking relief pursuant to Federal Rule of Bankruptcy Procedure 9024 asking the court to vacate a portion of the July 6, 2010 judgment order is DENIED.

The movant's request seeking relief pursuant to Federal Rule of Bankruptcy Procedure 9024 asking the court to vacate the August 5, 2010 order is DENIED.

The movant's request for alternative relief seeking to stay enforcement of the August 5, 2010 order is DENIED.